**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY JO MANNIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | Judge |
| | ) | Magistrate |
| DENTAL EXPERTS, LLC dba DENTAL | ) | |
| DREAMS LLC, and KOS SERVICES LLC, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, MARY JO MANNIX ("Mannix") by and through her attorneys, L. STEVEN PLATT and TERESA A. MINNICH of ROBBINS, SALOMON & PATT, LTD., complaining against DENTAL EXPERTS, LLC, dba DENTAL DREAMS, LLC (collectively "Dental Experts") and KOS SERVICES, LLC ("KOS") (collectively "Defendants"), states as follows:

## INTRODUCTION

1.      This is a case of a 65-year old, cancer patient, who was terminated after having cancer surgery and returning to work with a colostomy bag.

2.      She was terminated despite nine-years of faithful, reliable, loyal and exemplary service as an accountant/bookkeeper professional for the Defendants.

3.      During the nine-year period prior to her surgery, she received compliments regarding her work, regular bonuses and steady pay increases.

4.      She never was criticized for her work and was given more responsibility over time.

5.      No issues were ever raised about her performance prior to her having colon cancer surgery in the summer of 2016.

6.     Her work-load was steady to increase over all of her nine-years until she returned to work from colon cancer surgery.

7.     Before she was even scheduled to return to work on August 8, 2016, she was called into her supervisor's office on August 1, 2016.

8.     In her meeting, she was hectored about going on to Medicare when she turned 65 on her then-approaching birthday.

9.     Plaintiff's age had never previously been a topic of discussion until this point.

10.     At the meeting her supervisor made it clear that her continued employment could depend on her going off the company insurance plan and going onto Medicare.

11.     He did not explain why.

12.     There was no legitimate business or economic reason to push her off the company health insurance plan and none was ever articulated by anyone.

13.     After returning to work, despite constant harassment about going on Medicare, Plaintiff finally refused to leave the company health insurance plan and go on Medicare when she turned 65.

14.     She could not really afford to go on Medicare especially as a cancer patient.

15.     It would have resulted in her having to switch doctors in mid-cancer treatment as her doctors did not accept Medicare.

16.     Medicare's coverages were inferior to the medical coverage that the company health insurance plan provided.

17.     She would also have had to purchase at a substantial amount for her, out of her minimal salary, a Medi-gap supplementary insurance policy to cover the gaps in Medicare coverage.

18. These were all the factors that went into her decision to refuse to go on Medicare despite her employer's constant hectoring.

19. Because she refused to go on Medicare on when she turned 65, the Defendants retaliated against her.

20. They retaliated against her by penalizing her every time she had to leave work to see her cancer doctors for follow-up treatments.

21. They kept trying to trick her into working part-time without telling her that if she was part-time she would become ineligible for medical and other benefits that are not available to part-time employees.

22. When she refused to reduce to a part-time voluntarily, and as a result also of her refusing to go on Medicare, the Defendants fired her.

23. They terminated her three months after she turned 65 and originally refused to go on Medicare, on December 27, 2016, the day employees returned to work from the Christmas holiday break.

24. When they fired her they gave her no explanation.

25. However, they did not fight her unemployment claim.

26. Plaintiff's termination was illegal under the Americans With Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA") as more fully set forth as follows:

## JURISDICTION AND VENUE

27. Jurisdiction of this court is invoked by:

    a. the ADA of 1990, as amended by the ADAA, in 2009, 42 U.S.C. §§ 12101, 12102(1); 12102(2)(A)-(B); 12102(4)(B); 12102(4)(E)(i)-(ii); 12111(8);

12112(a); 12203(a); (b)(5)(A); and the regulations adopted pursuant to the ADA and ADAA, 29 C.F.R. §§ 1630.2(h)(1)-(2), 1630.2(j)(1)(vi), 1630.2(m), 1630.2(n), 1630.12(a);

b. the ADEA, of 1967, 29 USC §§ 621, 623(f)(2)(B), 626(b), 630(b);

c. Title VII, of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e–5(g)(1);

12117(a); 12203(a);

d. 42 U.S.C. § 1981a(c)(2) (limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e–5(g)(1);

e. 42 U.S.C. § 1981a(2) (providing for recovery of compensatory and punitive damages against defendant who violates § 102(b)(5) of ADA, 42 U.S.C. § 12112(b)(5); and

f. the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 as applicable to the ADEA (*see Lorillard v. Pons*, 434 U.S. 575, 582 (1978) ("[Other than] those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA.")).

28.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because:

a. Defendants reside in this district, in that they conduct business in this district sufficient to establish contacts with the district subjecting Defendants to the personal jurisdiction of the U.S. District Court of the Northern District of Illinois; and

b. All of the events or omissions giving rise to Plaintiff's claims occurred here in this district.

29.     The acts of discrimination, harassment, and retaliation that occurred against Mannix were continuous and ongoing over a period of time from approximately August 1, 2016 through December 27, 2016, when Mannix was terminated from Defendants.   Defendants discriminated, harassed, and/or retaliated against Mannix, and/or did not undo the acts of discrimination, harassment, and/or retaliation as more fully set forth herein.

30.     Mannix filed a Charge of Discrimination (the "Charge") with the United States Employment Equal Opportunity Commission (the "EEOC") on May 2, 2017, within 300 days of the last continuous act of discrimination, harassment, and/or retaliation that took place as described below. The Charge is hereby incorporated by reference as if fully set for herein, and is attached hereto as Exhibit A.

31.     The EEOC issued a Right to Sue Letter to Mannix on May 16, 2017. A copy of the Right to Sue Letter is attached hereto as Exhibit B. This complaint is being filed within 90-days of Mannix' receipt of the Right to Sue Letter.

32.     This action is not filed with respect to the Employee Retirement Income Security Act ("ERISA") of 1974 or pursuant to any claim with respect to the receipt or non-receipt by Mannix of long-terms disability benefits or any rights Mannix may have with respect to the Illinois Workers Compensation Act.

**PARTIES**

33.     Plaintiff Mary Jo Mannix is a 65 year old female. At all times relevant to the allegations contained in the instant complaint, Mannix suffered from colon cancer and was a person with a disability within the meaning of all applicable statutes. Mannix resides in Oak Forest, Illinois.

- 5 -

34. Defendant Dental Experts, LLC dba Dental Dreams, LLC ("Dental Experts") is an Illinois limited liability company that owns and operates dental offices throughout the United States, including in Chicago, Illinois. Dental Experts' principal office is located at 350 N. Clark Street, Suite 600, Chicago, Illinois.

35. Defendant Kos Services, LLC ("Kos") is an Illinois limited liability company, and is the parent company of Defendant Dental Experts. Kos handles all administrative work associated with the business of Dental Experts. Kos is located at 350 N. Clark Street, Suite 600, Chicago, Illinois.

## FACTS

36. Beginning in 2007, Mannix was employed by Defendants, full-time, as an accountant in Defendants' headquarters office at 350 N. Clark Street, Chicago, Illinois.

37. Kos was Mannix' direct employer.

38. Mannix was told that Kos was the parent company of Dental Experts.

39. During Mannix' years of employment, Defendants did not maintain any distinction between Kos and Dental Experts. Indeed, both Kos and Dental Experts operated out of the office located at 350 N. Clark Street, Chicago, Illinois.

40. Mannix performed work for both Kos and Dental Experts.

41. Mannix was qualified to occupy the position of accountant at Kos and Dental Experts.

42. Beginning in 2007 and continuing throughout her employment, Mannix received good performance evaluations.

43. As a result, Mannix also received regular salary increases, bonuses, and progressively greater job responsibilities.

44.     At all times relevant, Mannix met Defendants' legitimate expectations.

45.     In or around February 2016, Mannix was diagnosed with colon cancer.

46.     Mannix' medical team immediately proscribed radiation and chemotherapy, and scheduled those treatments to occur during twenty-eight (28) days immediately following Mannix' diagnosis.

47.     During the twenty-eight (28) day course of radiation and chemotherapy, Mannix was unable to work.

48.     Mannix returned to work in the first part of May 2016.

49.     After returning to work, and continuing into July 2016, Mannix worked full time in the accounting position she had previously occupied for Defendants.

50.     Mannix continued to meet her employers' legitimate job expectations.

51.     On July 12, 2016, Mannix underwent colon surgery, an ileostomy. The ileostomy removed Mannix' colon, and required her to begin using a colostomy bag.

52.     Following the ileostomy, Mannix was scheduled to be off work until August 8, 2016.

53.     Mannix intended to return to work full-time, and to continue working until at least age seventy-five (75) years.

54.     Nevertheless, Peter Stathakis, Defendants' Chief Financial Officer ("CFO") and Mannix' direct supervisor, called Mannix into the office to attend a meeting with him on August 1, 2016.

55.     At that meeting, Mr. Stathakis pressured Mannix to reduce her employment to a part-time capacity.

56.     Mannix restated her intention of returning to work in a full-time capacity and assured Mr. Stathakis that she felt healthy and was able to fill a full-time position.

57.     Mr. Stathakis responded by informing Mannix that the company was self-insured for health care.  Mr. Stathakis also informed Mannix that her cancer was costing the company a lot of money.

58.     Mr. Stathakis stated his awareness of Mannix' sixty-fifth birthday, which was approaching, and told Mannix she should accept Medicare upon her eligibility at age sixty-five (65).

59.     After Mannix returned to work on August 8, 2016, Mr. Stathakis and Defendants continued to harass Mannix regarding shifting to part-time status and/or accepting Medicare.

60.     Mr. Stathakis and Defendants attempted to force Mannix to accept Medicare.

61.     Ultimately, Mannix refused to accept Medicare.  As she explained to Defendants, the Medicare plan was inferior to the group-medical insurance coverage she received through her employers' plan.

62.     Accepting Medicare would have required Mannix to change medical providers, including those doctors providing her cancer treatment.

63.     Accepting Medicare also would have required Mannix to purchase supplemental coverage, and therefore would have caused Mannix to pay more out-of-pocket for medical insurance premiums.

64.     After Mannix refused to accept Medicare, Defendants repeatedly attempted to trick, force, or harass Mannix to reduce her employment to part-time.

65.     For example, although Defendants had previously granted Mannix paid time off in order to attend her reasonable and limited medical appointments related to her cancer

treatment, after Mannix refused Medicare, Defendants refused to grant Mannix paid time off for any additional medical appointments.

66. In addition, the behavior of Defendants' managers during interactions with Mannix changed. Defendants' managers became distant and cold toward Mannix.

67. Defendants seemed angry that Mannix refused to be tricked into accepting part-time employment.

68. Upon information and belief, Defendants wanted Mannix to shift to part-time employment so that she would no longer be eligible for the company's group-medical insurance benefit.

69. Finally, on December 27, 2016, Defendants terminated Mannix. Defendants did not offer any reason for the termination.

## COUNT I
## ADA-DISCRIMINATION

70. Mannix restates and realleges paragraphs 1 through 69 above as and for this paragraph 70, as if fully set forth herein.

71. At all times relevant, Mannix met her employers' legitimate job expectations.

72. Mannix suffers, and at all times relevant suffered, from physical impairments, including colon cancer, chemotherapy, radiation, and ileostomy.

73. Currently, and at all times relevant, Mannix' physical impairments substantially limited one or more of Mannix' major life activities, in accordance with 42 U.S.C. § 12111(8). See also *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

74. Mannix is a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (the "ADA"), in that she has physical impairments as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

75.     Mannix had a record of physical impairments when she was terminated by Defendants on December 27, 2016.

76.     Even if Mannix' colon cancer did not rise to the level of a disability under the ADA, the prescribed medical treatment for that colon cancer, including the chemotherapy, radiation, and ileostomy, were and are still disabling under the ADA; the chemotherapy, radiation, and ileostomy effect Mannix' personal life and therefore create physical impairments that substantially limit one or more of Mannix' personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at 11-4.

77.     Mannix' colon cancer, chemotherapy, and radiation treatments are not episodic. Mannix' colon cancer is severe, she has had the condition for over a year, and the condition is permanent, with a life-expectancy prognosis of between two and five years.

78.     Even if Mannix' symptoms were episodic, her colon cancer, chemotherapy, radiation treatments, and ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii). See also *EEOC v. Sears, Roebuck, & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998)(holding that episodic flares characteristic of lupus were a disability under the ADA).

79.     Defendants unlawfully, and in violation of the ADA

     a.  terminated Mannix because of her disabilities, including colon cancer, chemotherapy, radiation treatments, and ileostomy;

     b.  discriminated against her as a qualified individual with disability by utilizing standards, criteria, or methods of administration that he the effect of discriminating against her on the basis of disability;

    c.  discriminated against her as a qualified individual with disability by excluding or otherwise denying equal job benefits to Mannix because of her disability which Defendants knew she had and despite the fact that Mannix was a qualified individual with a disability known to have a relationship or association with colon cancer;

    d.  discriminated against her as a qualified individual with disability by failing to make reasonable accommodations to Mannix based on her known physical limitations of an otherwise qualified individual with a disability who is an employee by not allowing Mannix to receive paid time off in order to attend medical appointments, by harassing Mannix for missing work in order to attend medical appointments, and by denying employment opportunities to Mannix such as proper pay; and

    e.  discriminated against her as a qualified individual with disability by terminating Mannix when she was an otherwise qualified individual with a disability.

80.    Defendants would not have terminated Mannix had it not been for her disabilities as described above.

81.    Following her termination, Mannix was replaced by two individuals without any disabilities, Sara Davidson and Jorayson Nool, who took over Mannix' work and responsibilities.

82.    As a direct and proximate result of Mannix being terminated, she has suffered, and has been caused to suffer lost wages, back pay, and fringe benefits.

83.    Mannix will suffer damages going forward, as she intended to work until at least age seventy-five (75) years.

84.     Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

85.     Mannix is also entitled to be reinstated to her position with Defendants or, in the alternative and if reinstatement is not feasible, to front pay and benefits.

## COUNT II
## ADA-HARASSMENT

86.     Mannix restates and realleges paragraphs 1 through 69 above as and for this paragraph 86, as if fully set forth herein.

87.     At all times relevant, Mannix met her employers' legitimate job expectations.

88.     Mannix suffers, and at all times relevant suffered, from physical impairments, including colon cancer, chemotherapy, radiation, and ileostomy.

89.     Currently, and at all times relevant, Mannix' physical impairments substantially limited one or more of Mannix' major life activities, in accordance with 42 U.S.C. § 12111(8). See also *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

90.     Mannix is a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (the "ADA"), in that she has physical impairments as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

91.     Mannix had a record of physical impairments at all times relevant, including when she was terminated by Defendants on December 27, 2016.

92.     Even if Mannix' colon cancer did not rise to the level of a disability under the ADA, the prescribed medical treatment for that colon cancer, including the chemotherapy, radiation, and ileostomy, were and are still disabling under the ADA; the chemotherapy, radiation, and ileostomy effect Mannix' personal life and therefore create physical impairments

that substantially limit one or more of Mannix' personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at 11-4.

93.     Mannix' colon cancer, chemotherapy, and radiation treatments are not episodic. Mannix' colon cancer is severe, she has had the condition for over a year, and the condition is permanent, with a life-expectancy prognosis of between two and five years.

94.     Even if Mannix' symptoms were episodic, her colon cancer, chemotherapy, radiation treatments, and ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii).  See also *EEOC v. Sears, Roebuck, & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998)(holding that episodic flares characteristic of lupus were a disability under the ADA).

95.     Defendants unlawfully, and in violation of the ADA, harassed Mannix from August 1, 2016 until December 27, 2016, by

      a.   threatening Mannix  and otherwise attempting to force her reduce her employment to part-time;

      b.   failing to pay Mannix for reasonable, necessary, and limited time off to attend medical appointment, despite having granted Mannix paid time off for medical appointments prior to her ileostomy; and

      c.    generally treating Mannix coldly and distantly.

96.     Defendants would not have harassed Mannix had it not been for her disabilities as described above.

97.     Other employees of Defendants, who were not qualified individuals with a disability, were not harassed by Defendants.

98.     As a direct and proximate result of Mannix being harassed, she has suffered, and has been caused to suffer lost wages and back pay.

99.     Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

## COUNT III
## ADA-RETALIATION

100.    Mannix repeats and realleges paragraphs 1 through 69 above as and for this paragraph 100, as if fully stated herein.

101.    At all times relevant, Mannix met her employers' legitimate job expectations.

102.    Mannix suffers, and at all times relevant suffered, from physical impairments, including colon cancer, chemotherapy, radiation, and ileostomy.

103.    Currently, and at all times relevant, Mannix' physical impairments substantially limited one or more of Mannix' major life activities, in accordance with 42 U.S.C. § 12111(8). See also *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

104.    Mannix is a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (the "ADA"), in that she has physical impairments as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

105.    On December 27, 2016, Defendant terminated Mannix without offering any explanation or reason for the termination.

106.    Mannix had a record of physical impairments when she was terminated by Defendants on December 27, 2016.

107.    Even if Mannix' colon cancer did not rise to the level of a disability under the ADA, the prescribed medical treatment for that colon cancer, including the chemotherapy, radiation, and ileostomy, were and are still disabling under the ADA; the chemotherapy,

radiation, and ileostomy effect Mannix' personal life and therefore create physical impairments that substantially limit one or more of Mannix' personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at 11-4.

108.    Mannix' colon cancer, chemotherapy, and radiation treatments are not episodic. Mannix' colon cancer is severe, she has had the condition for over a year, and the condition is permanent, with a life-expectancy prognosis of between two and five years.

109.    Even if Mannix' symptoms were episodic, her colon cancer, chemotherapy, radiation treatments, and ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii).  See also *EEOC v. Sears, Roebuck, & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998)(holding that episodic flares characteristic of lupus were a disability under the ADA).

110.    Defendants unlawfully, and in violation of the ADA, retaliated against Mannix by harassing her and by eventually terminating her on December 27, 2016.

111.    Defendants would not have retaliated against Mannix had it not been for her disabilities as described above.

112.    Mannix was replaced by two individuals without any disabilities, Sara Davidson and Jorayson Nool, who took over Mannix' work and responsibilities.

113.    Other employees of Defendants, who were not qualified individuals with a disability, did not experience harassment due to retaliation, termination due to retaliation, or retaliation by Defendants.

114.    As a direct and proximate result of Mannix experiencing retaliation, she has suffered, and has been caused to suffer lost wages, back pay and fringe benefits.

115.    Mannix will continue to suffer damages in the future, as she intended to continue working until at least the age of seventy-five (75) years.

116.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

117.    Mannix is also entitled to be reinstated to her position with Defendants, and in the alternative if reinstatement is not feasible, to front pay and benefits.

## COUNT IV
## ADEA-DISCRIMINATION

118.    Mannix restates and realleges paragraph 1 through 69 above as and for this paragraph 118, as if fully stated herein.

119.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

120.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

121.    Mannix was born in 1951.

122.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

123.    In early May 2016, I returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

124.    Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

125. On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

126. At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

127. Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

128. When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

129. Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

130. When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

131. Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannis into part time employment.

132. Finally, Defendant terminated Mannix on December 27, 2016.

133. Defendants unlawfully, and in violation of the Age Discrimination in Employment Act (the "ADEA"), terminated Mannix because of her age, 65.

134. But for Mannix' age, Mannix would not have been terminated.

135. Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

136.    As a direct and proximate result of Mannix being terminated, she has suffered, and has been caused to suffer lost wages, back pay, and fringe benefits.

137.    Mannix will continue to suffer damages in the future, as she intended to continue working until at least age seventy-five (75) years.

138.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

139.    Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

## COUNT V
## ADEA-HARASSMENT

140.    Mannix restates and realleges paragraph 1 through 69 above as and for this paragraph 140, as if fully stated herein.

141.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

142.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

143.    Mannix was born in 1951.

144.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

145.    In early May 2016, I returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

146. Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

147. On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

148. At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

149. Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

150. When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

151. Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

152. When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

153. Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

154. Defendants wanted Mannix to transition to part time employment so that she would no longer be eligible to participate in the Defendants' group medical insurance benefit.

155. Mannix refused to be tricked or harassed into part time status, which seemed to make Defendants angry.

156.    Defendants unlawfully, and in violation of the Age Discrimination in Employment Act (the "ADEA"), harassed Mannix because of her age, 65, by:

    a.  threatening Mannix and otherwise attempting to force her reduce her employment to part-time;

    b.  failing to pay Mannix for reasonable, necessary, and limited time off to attend medical appointment, despite having granted Mannix paid time off for medical appointments prior to her ileostomy; and

    c.  generally treating Mannix coldly and distantly.

157.    Prior to her ileostomy, Mannix never abused the privilege of paid time off for medical appointments. Rather, Mannix limited her missed time to necessary appointments and scheduled those appointments at times that she would not be missed at Defendants' office.

158.    Defendants were aware of Mannix' age and of the fact that she would be turning sixty-five (65) years old in 2016.

159.    Defendants did not treat any employees who were under the age of forty (40) years in the manner described above.

160.    On December 27, 2016, Mannix was subjected to the final act of Defendants' harassment when Defendants terminated Mannix because of her age, sixty-five (65) years.

161.    But for Mannix' age, Mannix would not have been harassed, as described above.

162.    After her termination, Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

163.    As a direct and proximate result of Mannix being harassed and terminated, she has suffered, and has been caused to suffer lost wages, back pay, fringe benefits, and emotional distress.

164.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

165.    Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

**COUNT VI**
**ADEA-RETALIATION**

166.    Mannix restates and realleges paragraph 1 through 69 above as and for this paragraph 166, as if fully set forth herein.

167.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

168.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

169.    Mannix was born in 1951.

170.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

171.    In early May 2016, Mannix returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

172.    Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

173. On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

174. At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

175. Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

176. When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

177. Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

178. When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

179. Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

180. Defendants wanted Mannix to transition to part time employment so that she would no longer be eligible to participate in the Defendants' group medical insurance benefit.

181. Mannix refused to be tricked into part time status, which seemed to make Defendants angry.

182. Defendants unlawfully, and in violation of the Age Discrimination in Employment Act (the "ADEA"), retaliated against Mannix because of her age, 65, by:

   a. threatening, harassing, and otherwise attempting to force Mannix to reduce her employment to part-time;

   b. failing to pay Mannix for reasonable, necessary, and limited time off to attend medical appointment, despite having granted Mannix paid time off for medical appointments prior to her ileostomy;

   c. generally treating Mannix coldly and distantly; and

   d. terminating Mannix on December 27, 2016.

183. Prior to her ileostomy, Mannix never abused the privilege of paid time off for medical appointments. Rather, Mannix limited her missed time to necessary appointments and scheduled those appointments at times that she would not be missed at Defendants' office.

184. Defendants were aware of Mannix' age and of the fact that she would be turning sixty-five (65) years old in 2016.

185. Defendants did not treat any employees who were under the age of forty (40) years in the manner described above.

186. On December 27, 2016, Mannix was subjected to the final act of Defendants' retaliation when Defendants terminated Mannix because of her age, sixty-five (65) years.

187. But for Mannix' age, Mannix would not have experienced retaliation, as described above.

188. After her termination, Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

189.    As a direct and proximate result of Mannix experiencing retaliation, she has suffered, and has been caused to suffer lost wages, back pay, fringe benefits, and emotional distress.

190.    Mannix will continue to suffer damages into the future, as she intended to continue working until at least age seventy-five (75) years.

191.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

192.    Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

## COUNT VII
### ADEA-WILLLFULNESS

193.    Mannix restates and realleges paragraph 1 through 69 and 118 through 192 above as and for this paragraph 193, as if fully set forth herein.

194.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

195.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

196.    Mannix was born in 1951.

197.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

198.    In early May 2016, I returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

199.    Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

200.    On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

201.    At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

202.    Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

203.    When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

204.    Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

205.    When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

206.    Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

207.    Defendants wanted Mannix to transition to part time employment so that she would no longer be eligible to participate in the Defendants' group medical insurance benefit.

208.    Mannix refused to be tricked into part time status, which seemed to make Defendants angry.

209.     Prior to her ileostomy, Mannix never abused the privilege of paid time off for medical appointments. Rather, Mannix limited her missed time to necessary appointments and scheduled those appointments at times that she would not be missed at Defendants' office.

210.     Defendants were aware of Mannix' age and of the fact that she would be turning sixty-five (65) years old in 2016.

211.     Defendants did not treat any employees who were under the age of forty (40) years in this way.

212.     On December 27, 2016, Mannix was subjected to the final act of Defendants' retaliation when Defendants terminated Mannix because of her age, sixty-five (65) years.

213.     But for Mannix' age, Mannix would not have experienced the harassment, retaliation, and discrimination as described above.

214.     After her termination, Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

215.     As a direct and proximate result of Mannix experiencing these willful acts of discrimination, harassment, and retaliation, leading up to Mannix' termination and including that termination, Mannix has suffered, and has been caused to suffer lost wages, back pay, fringe benefits, and emotional distress.

216.     Mannix will continue to suffer damages into the future, as she intended to continue working until at least age seventy-five (75) years.

217.     Defendants knew or showed willful disregard for whether the ADEA prohibited Defendants' conduct.

218.   Because Defendants acts were willful, Mannix is entitled to double the back-pay damages she has suffered and double the fringe benefits lost, pursuant to the ADEA 19 U.S.C. § 626(b)

219.   Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

220.   Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

## JURY TRIAL DEMANDED

Plaintiff demands jury trial of all counts to which she is entitled to a jury trial.

WHEREFORE, Plaintiff MARY JO MANNIX prays that this Court enter an Order (a) finding Defendants KOS SERVICES, LLC and DENTAL EXPERTS LLC, dba Dental Dreams, LLC liable for unlawful discrimination, harassment, and retaliation, in violation of the Americans With Disabilities Act; (b) finding Defendants liable for unlawful discrimination, harassment, and retaliation, in violation of the Age Discrimination in Employment Act; (c) finding that Defendants acted willfully in violating the ADA and/or the ADEA; (d) granting Plaintiff relief for Defendants' violations of the ADA in the form of lost wages, back pay, fringe benefits, attorneys' fees and costs, reinstatement to her position with Defendants, or in the alternative, front pay and benefits; (e) granting Plaintiff relief for Defendants' violations of the ADEA in the form of back pay, liquidated damages, attorneys' fees and costs, reinstatement to her position with Defendants, or in the alternative, front pay and benefits; and (f) for such other and further relief as the Court deems just in the premises.

Respectfully submitted,

MARY JO MANNIX

By: ___/s/ Teresa A. Minnich_____
Attorney for Plaintiff

L. Steven Platt (# 3122005)
Teresa A. Minnich (#6299526)
ROBBINS SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
T: (312) 782-9000
F: (312) 782-6690
E: lsplatt@rsplaw.com; tminnich@rsplaw.com
1476613 (13529.1)

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2017-03539 |

and EEOC

State or local Agency, if any

| Name (Indicate Mr. Ms. Mrs.)<br>Ms. Mary Jo Mannix | Home Phone (Incl. Area Code) | Date of Birth<br>1951 |
|---|---|---|

| Street Address | City, State and ZIP Code<br>Oak Forest IL 60152-5228 | |
|---|---|---|

Named are the Employers, That I believe Discriminated Against Me.

| Name<br>DENTAL EXPERTS. LLC dba Dental Dreams LLC | No. Employees, Members<br>250 | Phone No. (Include Area Code)<br>(312) 274-0308 # 4 |
|---|---|---|
| Street Address<br>350 N. Clark, Suite 600 | City, State and ZIP Code<br>Chicago, IL 60654-4782 | |
| Name<br>KOS SERVICES LLC, parent co of Dental Experts LLC | No. Employees, Members<br>250 | Phone No. (Include Area Code)<br>(312) 274-0308 |
| Street Address<br>350 N. Clark, Suite 600 | City, State and ZIP Code<br>Chicago, IL 60654-4782 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest 8/2016    Latest 12/27/2016 |
|---|---|
| RACE    COLOR    SEX    RELIGION    NATIONAL ORIGIN<br><br>RETALIATION  X    AGE X    DISABILITY  X    OTHER (Specify below.) X<br>Retal, Harassmt, Term | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):

I.    The respondents are an interrelated group of companies that operate 63 dental practices throughout the United States. They are operated under some variation of the name Dental Dreams or Dental Experts. The headquarters office is in Chicago and operates through Dental Experts, LLC, dba Dental Dreams LLC. Dental Experts is an Illinois LLC with its principal offices located at 350 N. Clark, Chicago IL. Respondent KOS Services, LLC is the parent company of Dental Experts that handles all the administrative work for Dental Experts, LLC. Its Managing Member is Khurram Hussain, the lawyer/husband of Sameera Hussain, DMD, the Managing Member of Dental Experts LLC.

II.    I first went to work for the Respondents in 2007 as an accountant in their headquarters offices at 350 N. Clark in Chicago where I worked throughout my tenure at this set of employers. I worked for KOS and Dental Experts and Dental Dreams. My direct employer was KOS which I was told was the parent company of Dental Experts which also operated under the name of Dental Dreams. There was no distinction maintained between the companies. At the end of my work for the Respondents my bosses were Peter Stathakis, the

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY — When necessary for State and Local Agency Requirements |
|---|---|
| | RECEIVED EEOC<br><br>MAY 0 2 2017<br><br>CHICAGO DISTRICT OFFICE |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT |
| ___3 -1-17___    ___(signature)___<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT
A

the Chief Financial Officer or CFO, who was my direct supervisor, and Brian McKinnon, the Controller who also worked with me. The Managing Member of the Dental Experts LLC, Dr. Sameera Hussain, DMD, is the head dentist of Dental Experts dba Dental Dreams because, I was told, a dental practice has to be headed by a dentist. I interacted with her. Her husband Khurram Hussain is the Registered Agent and the lawyer for both companies. I had less interaction with him. All three companies operate out of the husband's law offices at 350 N. Clark on the 6th Flr., Chicago IL 60654. I had some direct interaction with Hurram Hussain and a bit more direct interactions with Sameera Hussain. Most of my interactions were with Peter Stathakis and Brian McKinnon.

On December 27, 2016, I was terminated. No reason was given.

III. Discrimination based on disability – termination

A. I have colon cancer, which was first diagnosed February of 2016. I had radiation and chemotherapy treatments daily, for the first 28 days. I was off work then and came back to work the first part of May 2016. I worked full-time up to when I had colon surgery, an Ileostomy, on July 12, 2016. I was scheduled to come back to work on August 8, but Peter Stathakis called me in for a meeting on August 1, 2016, and tried to pressure me into only coming back part-time. When I refused and said I was able to work full-time he told me the company was "self-insured" for health care and that my cancer was costing the company a lot of money. He then pressured me to take Medicare in ▮▮▮▮▮▮ because he knew I was turning 65 in ▮▮▮▮▮ I told him at the meeting that I wanted to come back full-time because I felt fine. I eventually told him that I did not want to take Medicare and be subject to not being able to go to my doctors and have gaps in my coverage. When I told him that, that is when they started retaliating against me by not paying for my time off to go to see a doctor, and they started becoming distant and non-communicative with me, giving me the cold shoulder.

B. On December 27, 2016, I was terminated without any reason given.

C. I was qualified for the position of accountant at Respondents and performed the job with excellent performance evaluations and steady raises for all 9 years that I was in the position.

D. I always met my employer's legitimate expectations.

E. I am therefore a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (ADA), in that I have physical impairments (colon cancer, chemotherapy, radiation, Ileostomy), as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

F. My physical impairments (colon cancer, chemotherapy, radiation, Ileostomy) substantially limit one or more of my major life activities, as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8); and 29 C.F.R. § 1630.2(j).

G. I have a record of such an impairments and had a record of such impairments that affect a major life activity at all times relevant in accordance with 42 U.S.C. §12111(8); *see also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

H. I had a record of such impairment when I was fired on December 27, 2016, as defined by 42 U.S.C. §12102(2).

I. Even if my medical condition, colon cancer, did not rise to the level of a disability under the ADA, the prescribed medical treatment for my colon cancer, the chemotherapy, radiation and Ileostomy surgery, was and is still disabling under the ADA because it effects my personal life and therefore creates a physical impairment for me personally that substantially limits one or more of my personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at II-4.

J. My colon cancer and the chemotherapy and radiation treatments are not episodic. The cancer is severe, I have had the condition for over a year, the condition is permanent, with a life-expectancy prognosis of two-to-five years. It meets the definition of substantially limiting under 29 C.F.R. § 1630.2.

K. Even if my symptoms were episodic, my colon cancer, the chemotherapy and radiation treatments and the Ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii); *See also EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998) (holding that episodic flares characteristic of lupus were a disability under the ADA).

L. The fact that I had an Ileostomy, chemotherapy, and radiation and thus took mitigating measures to deal with the colon cancer, does not make my disability not a

- 3 -

disability. The 2008 ADA Amendments state that mitigating measures (other than eyeglasses or contact lenses) shall not be considered in determining whether a person with a physical impairment is disabled for ADA purposes, which effectively overruled *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999).

M. I was subjected to unlawful discrimination (termination) because of my disabilities (colon cancer, chemotherapy, radiation, Ileostomy) in violation of the ADA.

N. The Respondents violated the ADA by terminating me on December 27, 2016 because of my disabilities because the ADA prohibits discrimination against me as a qualified individual with a disability in regard to, discharge of employees, employee compensation and fringe benefits, retaliation and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

O. They further discriminated against me as a qualified individual with a disability (colon cancer, chemotherapy, radiation, Ileostomy) on the basis of disability by: (1) utilizing standards, criteria, or methods of administration that had the effect of discriminating against me on the basis of disability; (2) excluding or otherwise denying equal job benefits to me because of my disability which they knew I had (colon cancer) despite the fact that I was a qualified individual known to have a relationship or association with colon cancer; (3)(A) they did not make reasonable accommodations to me based on the known physical limitations of an otherwise qualified individual with a disability who is an employee by not allowing me to go to doctor appointments without docking me in pay and harassing me for missing time from work by going; (B) denying employment opportunities to me such as proper pay, denying me pay and (4) terminating me when I was an otherwise qualified individual with a disability, in violation of 42 U.S.C. § 12112 (b).

P. Respondents would not have terminated me had it not been for my disabilities as described above.

Q. I was replaced by two individuals without any disabilities, Sara Davidson and Jorayson Nool who took over my work and responsibilities.

R. As a direct and proximate cause of my being terminated, I suffered, I have been caused to suffer lost wages, back pay, fringe benefits, and will suffer damages going forward as I intended to work until at least age 75.

S. I am also entitled to costs and attorney's fees for having to bring this action.

T. I am also entitled to be reinstated to my position with Respondents or front pay and benefits if reinstatement is not feasible.

IV. Discrimination based on disability – harassment

A. I have colon cancer, which was first diagnosed February of 2016. I had radiation and chemotherapy treatments daily, for the first 28 days. I was off work then and came back to work the first part of May 2016. I worked full-time up to when I had colon surgery, an Ileostomy, on July 12, 2016. I was scheduled to come back to work on August 8, but Peter Stathakis called me in for a meeting on August 1, 2016, and tried to pressure me into only coming back part-time. When I refused and said I was able to work full-time he told me the company was "self-insured" for health care and that my cancer was costing the company a lot of money. He then pressured me to take Medicare in ▇▇▇▇▇ because he knew I was turning 65 in ▇▇▇▇▇ I told him at the meeting that I wanted to come back full-time because I felt fine. I eventually told him that I did not want to take Medicare and be subject to not being able to go to my doctors and have gaps in my coverage. When I told him that, that is when they started retaliating against me by not paying for my time off to go to see a doctor, and they started becoming distant and non-communicative with me, giving me the cold shoulder.

B. I was harassed for not agreeing to go on part-time hours and for not agreeing to go on Medicare to get off the Respondents' self-funded group medical insurance policy.

C. I was qualified for the position of accountant at Respondents and performed the job with excellent performance evaluations and steady raises for all 9 years that I was in the position.

D. I always met my employer's legitimate expectations.

E. I am therefore a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (ADA), in that I have physical impairments (colon cancer, chemotherapy, radiation, Ileostomy), as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

F. My physical impairments (colon cancer, chemotherapy, radiation, Ileostomy) substantially limit one or more of my major life activities, as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8); and 29 C.F.R. § 1630.2(j).

G. I have a record of such an impairments and had a record of such impairments that affect a major life activity at all times relevant in accordance with 42 U.S.C.

§12111(8); *see also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

H. I had a record of such impairment when I was fired on December 27, 2016, as defined by 42 U.S.C. §12102(2).

I. Even if my medical condition, colon cancer, did not rise to the level of a disability under the ADA, the prescribed medical treatment for my colon cancer, the chemotherapy, radiation and Ileostomy surgery, was and is still disabling under the ADA because it effects my personal life and therefore creates a physical impairment for me personally that substantially limits one or more of my personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at II-4.

J. My colon cancer and the chemotherapy and radiation treatments are not episodic. The cancer is severe, I have had the condition for over a year, the condition is permanent, with a life-expectancy prognosis of two-to-five years. It meets the definition of substantially limiting under 29 C.F.R. § 1630.2.

K. Even if my symptoms were episodic, my colon cancer, the chemotherapy and radiation treatments and the Ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii); *See also EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998) (holding that episodic flares characteristic of lupus were a disability under the ADA).

L. The fact that I had an Ileostomy, chemotherapy, and radiation and thus took mitigating measures to deal with the colon cancer, does not make my disability not a disability. The 2008 ADA Amendments state that mitigating measures (other than eyeglasses or contact lenses) shall not be considered in determining whether a person with a physical impairment is disabled for ADA purposes, which effectively overruled *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999).

M. I was subjected to unlawful discrimination (harassment) because of my disabilities (colon cancer, chemotherapy, radiation, Ileostomy) in violation of the ADA.

N. The Respondents violated the ADA by **harassing me** from August 1, 2016 through December 27, 2016 because of my disabilities because the ADA prohibits discrimination against me as a qualified individual with a disability in regard to,

- 6 -

harassment of employees, and threatening them over terms, conditions, and privileges of employment based on their disabilities by threatening me, trying to get me to take part-time hours, trying to get me to go off the companies' group medical policy, not paying for my time off to go to doctor visits as they did before my operation, and generally giving me the cold shoulder and being distant with me at work. 42 U.S.C. § 12112(a).

O. They further discriminated against me as a qualified individual with a disability (colon cancer, chemotherapy, radiation, Ileostomy) on the basis of disability by: (1) utilizing standards, criteria, or methods of administration that had the effect of discriminating against me on the basis of disability; (2) excluding or otherwise denying equal job benefits to me because of my disability which they knew I had (colon cancer) despite the fact that I was a qualified individual known to have a relationship or association with colon cancer; (3)(A) they did not make reasonable accommodations to me based on the known physical limitations of an otherwise qualified individual with a disability who is an employee by not allowing me to go to doctor appointments without docking me in pay and harassing me for missing time from work by going; (B) denying employment opportunities to me such as proper pay, denying me pay and (4) harassing me from August 1, 2016 through December 27, 2016 when they terminated me when I was an otherwise qualified individual with a disability, in violation of 42 U.S.C. § 12112 (b).

P. Respondents would not have harassed me had it not been for my disabilities as described above.

Q. Others who were not qualified individuals with a disability were not harassed by Respondent.

R. As a direct and proximate cause of my being harassed, I suffered lost wages and back pay.

S. I am also entitled to costs and attorney's fees for having to bring this action.

V. Discrimination based on disability – retaliation

A. I have colon cancer, which was first diagnosed February of 2016. I had radiation and chemotherapy treatments daily, for the first 28 days. I was off work then and came back to work the first part of May 2016. I worked full-time up to when I had colon surgery, an Ileostomy, on July 12, 2016. I was scheduled to come back to work on August 8, but Peter Stathakis called me in for a meeting on August 1, 2016, and tried to pressure me into only coming back part-time. When I refused and said I was able

to work full-time he told me the company was "self-insured" for health care and that my cancer was costing the company a lot of money. He then pressured me to take Medicare in ████████ because he knew I was turning 65 in ████████. I told him at the meeting that I wanted to come back full-time because I felt fine. I eventually told him that I did not want to take Medicare and be subject to not being able to go to my doctors and have gaps in my coverage. When I told him that, that is when they started retaliating against me by not paying for my time off to go to see a doctor, and they started becoming distant and non-communicative with me, giving me the cold shoulder.

B. On December 27, 2016, I was terminated without any reason given.

C. I was qualified for the position of accountant at Respondents and performed the job with excellent performance evaluations and steady raises for all 9 years that I was in the position.

D. I always met my employer's legitimate expectations.

E. I am therefore a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (ADA), in that I have physical impairments (colon cancer, chemotherapy, radiation, Ileostomy), as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

F. My physical impairments (colon cancer, chemotherapy, radiation, Ileostomy) substantially limit one or more of my major life activities, as defined by 42 U.S.C. §§ 12102(2)(a), 12111(8); and 29 C.F.R. § 1630.2(j).

G. I have a record of such an impairments and had a record of such impairments that affect a major life activity at all times relevant in accordance with 42 U.S.C. §12111(8); *see also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

H. I had a record of such impairment when I was fired on December 27, 2016, as defined by 42 U.S.C. §12102(2).

I. Even if my medical condition, colon cancer, did not rise to the level of a disability under the ADA, the prescribed medical treatment for my colon cancer, the chemotherapy, radiation and Ileostomy surgery, was and is still disabling under the ADA because it effects my personal life and therefore creates a physical impairment

- 8 -

for me personally that substantially limits one or more of my personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at II-4.

J. My colon cancer and the chemotherapy and radiation treatments are not episodic. The cancer is severe, I have had the condition for over a year, the condition is permanent, with a life-expectancy prognosis of two-to-five years. It meets the definition of substantially limiting under 29 C.F.R. § 1630.2.

K. Even if my symptoms were episodic, my colon cancer, the chemotherapy and radiation treatments and the Ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii); *See also EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998) (holding that episodic flares characteristic of lupus were a disability under the ADA).

L. The fact that I had an Ileostomy, chemotherapy, and radiation and thus took mitigating measures to deal with the colon cancer, does not make my disability not a disability. The 2008 ADA Amendments state that mitigating measures (other than eyeglasses or contact lenses) shall not be considered in determining whether a person with a physical impairment is disabled for ADA purposes, which effectively overruled *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999).

M. I was subjected to unlawful discrimination (retaliation by termination and harassment) because of my disabilities (colon cancer, chemotherapy, radiation, Ileostomy) in violation of the ADA.

N. The Respondents violated the ADA by retaliating against me by harassing me and eventually terminating me on December 27, 2016 because of my disabilities because the ADA prohibits discrimination against me as a qualified individual with a disability in regard to, discharge of employees, employee compensation and fringe benefits, retaliation and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

O. They further discriminated against me as a qualified individual with a disability (colon cancer, chemotherapy, radiation, Ileostomy) on the basis of disability, retaliating against me by harassing me and eventually terminating me as retaliation, by: (1) utilizing standards, criteria, or methods of administration that had the effect of discriminating against me on the basis of disability; (2) excluding or otherwise denying equal job benefits to me because of my disability which they

knew I had (colon cancer) despite the fact that I was a qualified individual known to have a relationship or association with colon cancer; (3)(A) they did not make reasonable accommodations to me based on the known physical limitations of an otherwise qualified individual with a disability who is an employee by not allowing me to go to doctor appointments without docking me in pay and harassing me for missing time from work by going; (B) denying employment opportunities to me such as proper pay, denying me pay and (4) eventually retaliating against me by terminating me when I was an otherwise qualified individual with a disability, in violation of 42 U.S.C. § 12112 (b).

P. Respondents would not have retaliated against me by harassing me and retaliating against me by terminating me had it not been for my disabilities as described above.

Q. I was replaced by two individuals without any disabilities, Sara Davidson and Jorayson Nool who took over my work and responsibilities.

R. They did not retaliate, terminated due to retaliation, and harass due to retaliation others who were not qualified individuals with disabilities.

S. As a direct and proximate cause of my being terminated, I suffered, I have been caused to suffer lost wages, back pay, fringe benefits, and will suffer damages going forward as I intended to work until at least age 75.

T. I am also entitled to costs and attorney's fees for having to bring this action.

U. I am also entitled to be reinstated to my position with Respondents or front pay and benefits if reinstatement is not feasible.

VI. Discrimination based on age – termination

All allegations under the Age Discrimination in Employment Act of 1967 are made in the alternative to and or in addition to the allegations made above under the ADA

A. At all times relevant I met Respondents' reasonable expectations in the performance of my job as an accountant for them.

B. I received regular raises and bonuses and always got good evaluations for my work performance.

C. My DOB is ████ 1951.

D. In February of 2016, I was diagnosed with colon cancer and had to miss time from work from approximately mid-February of 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

E. I returned to work full-time at that point and worked full-time until July 12, 2016 when I had Ileostomy surgery as described above.

F. I was set to return on August 8, 2016.

G. I was called in for a meeting by my direct boss, Peter Stathakis, the CFO of Respondents, on August 1, 2016 to talk about my job.

H. At the meeting, Stathakis tried to get me to work part-time as indicated above.

I. He told me that my cancer treatment was costing the company a lot of money because the companies' health plan was self-insured and they paid for it themselves, as indicated above.

J. When I refused to reduce my hours to part-time, Stathakis started talking to me about the fact that I was near retirement age and that I could go on Medicare when I turned 65 in ███████ He tried to force me to take Medicare in ██████ to get me off the companies' health insurance policy.

K. When I ultimately refused to do this because the Medicare plan was inferior to the coverage provided under the group medical insurance plan provided by the companies, the companies started to harass me, retaliate against me and eventually terminated me on December 27, 2016.

L. When I refused to go on Medicare for the rest of the time, I was at Respondents that fall, Stathakis kept trying to trick me or force me into part-time status so that I would no longer be eligible for medical care with the companies because I would not be full-time.

M. I kept refusing to be tricked into part-time status, which seemed to make Stathakis mad.

N. In the alternative to my ADA allegations above, I believe that these acts of harassment and retaliation would not have happened but for the fact that I turned age, 65 in ███████ of 2016 and the companies knew my age and knew about it.

O. The companies did not treat anyone under the age of 40 this way.

P. On December 27, 2016, I was terminated because of my age, 65. In the alternative to the allegations under the ADA above, but for my age, 65, I would not have been terminated.

Q. I was replaced by two individuals substantially younger, Sara Davidson (DOB ▮1982), and Jorayson Nool (DOB: ▮1982). Both took over my work.

R. As a direct and proximate cause of my termination due to my age, I have been caused to suffer lost wages, back pay, fringe benefits, and will suffer damages going forward as I intended to work until at least age 75.

S. I am also entitled to costs and attorney's fees for having to bring this action.

T. I am also entitled to be reinstated to my position with Respondents or front pay and benefits if reinstatement is not feasible.

VII. Discrimination based on age – harassment

A. At all times relevant I was meeting Respondents' reasonable expectations in the performance of my job as an accountant for them.

B. I received regular raises and bonuses and always got good evaluations for my work performance.

C. My DOB is ▮1951.

D. In February of 2016, I was diagnosed with colon cancer and had to miss time from work from approximately mid-February of 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

E. I returned to work full-time at that point and worked full-time until July 12, 2016 when I had Ileostomy surgery as described above.

F. I was set to return on August 8, 2016.

G. I was called in for a meeting by my direct boss, Peter Stathakis, the CFO of Respondents, on August 1, 2016 to talk about my job.

H. At the meeting, Stathakis tried to harass me into switching to work part-time.

I.  He told me that my cancer treatment was costing the company a lot of money because the company's health plan was self-insured and they paid for it themselves.

J.  When I refused to reduce my hours to part-time, Stathakis started talking to me about the fact that I was near retirement age and tried to harass me into going on Medicare when I turned 65 in ████████ He tried to force me to take Medicare in ████████ to get me off the company's health insurance policy.

K.  When I ultimately refused to do this because the Medicare plan was inferior to the coverage provided under the group medical insurance plan provided by the company, the company started to harass me and eventually terminated me on December 27, 2016.

L.  When I refused to go on Medicare for the rest of the time, I was at Respondents that fall, Stathakis kept trying to trick me or force me and harass me into part-time status so that I would no longer be eligible for medical care with the company.

M.  I kept refusing to be tricked and harassed into part-time status, which seemed to make them mad.

N.  The harassment including the company not paying when I had to see a doctor for any treatment or miss any time from work due to treatment or progress evaluation as a result of my cancer, when previously they did pay me for my time off which was reasonable and limited both before and after the operation. I never abused the time I had to go and see my doctor limiting my time off to what was necessary at times when I would not be missed. The harassment also consisted of the managers being distant to me and being cold to me in their interactions with me. This was not the case before.

O.  In the alternative to my ADA allegations above, I believe that these acts of harassment would not have happened but for the fact that I turned age 65, in ████████ of 2016 and the company knew my age and knew about the fact that I was turning age 65 in ████████ of 2016.

P.  The company did not treat anyone under age 40 this way.

Q.  On December 27, 2016, I was subjected to the final act of harassment by them terminating me because of my age, 65. In the alternative to my allegations under the ADA above, but for my age, 65, I would not have been harassed as described above.

R. Younger people under the age of 40 were never harassed due to their age.

S. As a direct and proximate cause of these actions of age harassment discrimination leading up to my termination, I have been caused to suffer lost wages, back pay, fringe benefits and suffered emotional distress.

T. I am also entitled to costs and attorney's fees for having to bring this action.

U. I am also entitled to be reinstated to my position with Respondents or front pay and benefits if reinstatement is not feasible.

VIII. Discrimination based on age – retaliation

D. At all times relevant I was meeting Respondents' reasonable expectations in the performance of my job as an accountant for them.

E. I received regular raises and bonuses and always got good evaluations for my work performance.

F. My DOB is ███1951.

G. In February of 2016, I was diagnosed with colon cancer and had to miss time from work from approximately mid-February of 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

H. I returned to work full-time at that point and worked full-time until July 12, 2016 when I had Ileostomy surgery as described above.

I. I was set to return on August 8, 2016.

J. I was called in for a meeting by my direct boss, Peter Stathakis, the CFO of Respondents, on August 1, 2016 to talk about my job.

K. At the meeting, Stathakis tried to get me to work part-time.

L. He told me that my cancer treatment was costing the company a lot of money because the company's health plan was self-insured and they paid for it themselves.

M. When I refused to reduce my hours to part-time, he started talking to me about the fact that I was near retirement age and that I could go on Medicare when I

turned 65 in ███████. He tried to force me to take Medicare in ████████ to get me off the company's health insurance policy.

N. When I ultimately refused to do this because the Medicare plan was inferior to the coverage provided under the group medical insurance plan provided by the company, the companies started to retaliate against me and eventually retaliated against me by terminating me on December 27, 2016.

O. When I refused to go on Medicare for the rest of the time, I was at Respondents that fall, Stathakis kept trying to trick me or force me into part-time status so that I would no longer be eligible for medical care with the company.

P. I kept refusing to be tricked into part-time status that seemed to make the companies mad.

Q. The retaliation consisted of the company harassing me, not paying me to see my doctor and not paying me for any time, I had to take off where before they paid for all time off and for visits to doctors. It also consisted of the managers becoming distant toward me and cold toward me when this was not their attitude before.

R. I believe that these acts of retaliation would not have happened but for the fact that I turned age, 65 in ███████ of 2016 and the company knew my age and knew that I was turning age 65 in ██████ of 2016.

S. The company did not treat anyone under the age of 40 this way.

T. On December 27, 2016, the company engaged in its final act of retaliation by terminating me because of my age, 65. In the alternative to my allegations under the ADA above, but for my age, 65, I would not have been terminated for refusing to go on Medicare in ████████ or any time afterwards, or for refusing to semi-retire so they could take me off their medical plan as a part-time employee.

U. I was replaced by two individuals substantially younger, Sara Davidson (DOB ███1982), and Jorayson Nool (DOB:●1982). Both took over my work.

V. As a direct and proximate cause of these actions of age discrimination retaliation indicated above, I have been caused to suffer lost wages, back pay, fringe benefits, and will suffer damages going forward as I intended to work until at least age 75.

- 15 -

W. I am also entitled to costs and attorney's fees for having to bring this action.

X. I am also entitled to be reinstated to my position with Respondents or front pay and benefits if reinstatement is not feasible.

VI. Discrimination based on age – willfulness

A. At all times relevant I was meeting Respondents' reasonable expectations in the performance of my job as an accountant for them.

B. I received regular raises and bonuses and always got good evaluations for my work performance.

C. My DOB is ████/1951.

D. In February of 2016, I was diagnosed with colon cancer and had to miss time from work from approximately mid-February of 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

E. I returned to work full-time at that point and worked full-time until July 12, 2016 when I had Ileostomy surgery as described above.

F. I was set to return on August 8, 2016.

G. I was called in for a meeting by my direct boss, Peter Stathakis, the CFO of Respondents, on August 1, 2016 to talk about my job.

H. At the meeting, Peter tried to get me to work part-time.

I. He told me that my cancer treatment was costing the company a lot of money because the company's health plan was self-insured and they paid for it themselves.

J. When I refused to reduce my hours to part-time, Stathakis started talking to me about the fact that I was near retirement age and that I could go on Medicare when I turned 65 in ████████. He tried to force me to take Medicare in ████████ to get me off the company's health insurance policy.

K. When I ultimately refused to do this because the Medicare plan was inferior to the coverage provided under the group medical insurance plan provided by the

company, the company started to harass me, retaliate against me and eventually terminated me on December 27, 2016.

L. When I refused to go on Medicare for the rest of the time, I was at Respondents that fall, Stathakis kept trying to trick me or force me into part-time status so that I would no longer be eligible for medical care with the company.

M. I kept refusing to be tricked into part-time status that seemed to make the companies mad.

N. I believe that these acts of harassment and retaliation and my termination would not have happened but for the fact that I turned age, 65 in ███████ of 2016 and the company knew my age and knew that I was turning age 65 in █████ of 2016.

O. The company did not treat anyone under age of 40 this way.

P. On December 27, 2016, I was terminated because of my age, 65. In the alternative to my ADA allegations above, but for my age, 65, I would not have been terminated.

Q. These acts of age discrimination, age harassment, and age-based retaliation were all willful in that the Respondents knew or showed reckless disregard for the matter of whether their conduct was prohibited by the ADEA.

R. As a direct and proximate cause of these willful acts of age discrimination leading up to my termination and including my termination, I have been caused to suffer lost wages, back pay, fringe benefits, and will suffer damages going forward as I intended to work until at least age 75.

S. I was replaced by two individuals substantially younger, Sara Davidson (DOB ███/1982), and Jorayson Nool who was in his 30s. Both took over my work.

T. As a direct and proximate cause of these willful acts of age discrimination leading up to my termination and including my termination, I have been caused to suffer lost wages, back pay, fringe benefits, and will suffer damages going forward as I intended to work until at least age 75.

U. Because the Respondents' acts were willful, I am entitled to double the back-pay damages I have suffered and double the fringe benefits lost under the ADEA. 29 U.S.C. § 626(b).

V.  I am also entitled to costs and attorney's fees for having to bring this action.

W. I am also entitled to be reinstated to my position with Respondents or front pay and benefits if reinstatement is not feasible.

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | | | |
|---|---|---|---|
| To: | Mary Jo Mannix C/OSteven Platt<br>RSP Chicago<br>180 N. LaSalle St, Ste 3300<br>Chicago, IL 60601 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **William Hubbartt,** | |
| **440-2017-03539** | **Investigator** | **(312) 869-8091** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐   More than 180 days have passed since the filing of this charge.

☒   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_Julianne Bowman_      5/16/17

**Julianne Bowman,**
**District Director**      *(Date Mailed)*

Enclosures(s)

cc:    **Chief Executive Officer**
**KOS SERVICES LLC**
**Dental Experts LLC dba Dental Dreams LLC**
**350 N. Clark Street, Ste 600**
**Chicago, IL 60654**



EXHIBIT
B