**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MARY JO MANNIX,** | |
| Plaintiff, | No. 17 cv 5422 |
| v. | Judge Robert M. Dow, Jr. |
| **DENTAL EXPERTS, LLC d/b/a DENTAL DREAMS LLC, and KOS SERVICES LLC,** | Magistrate Judge Maria Valdez |
| Defendants. | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants Dental Experts, LLC d/b/ Dental Dreams LLC ("Dental") and KOS Services LLC ("KOS"), by and through their attorneys, hereby submit their answer and affirmative and other defenses to Plaintiff Mary Jo Mannix's ("Mannix") complaint as follows:

### INTRODUCTION

1.      This is a case of a 65-year old, cancer patient, who was terminated after having cancer surgery and returning to work with a colostomy bag.

**ANSWER:**     On information and belief, Defendants admit that Plaintiff is 65 years old. Defendants also admit that she told Defendants that she suffered from cancer, that she needed to undergo surgery concerning her diagnosis, and that she was terminated. Defendants admit Plaintiff shared that she used a colostomy bag. Defendants deny the remaining allegations in Paragraph 1 of the Complaint.

2.      She was terminated despite nine-years of faithful, reliable, loyal and exemplary service as an accountant/bookkeeper professional for the Defendants.

**ANSWER:**     Defendants admit that Defendants terminated Plaintiff and that she was

employed with KOS Services, LLC ("KOS") as an accountant for approximately nine (9) years. Defendants deny the remaining allegations in Paragraph 2 of the Complaint.

3.      During the nine-year period prior to her surgery, she received compliments regarding her work, regular bonuses and steady pay increases.

**ANSWER:**      Defendants admit Plaintiff was employed with KOS for approximately nine (9) years and that she has received compliments regarding her work.  Plaintiff informed Defendants that she underwent surgery. Plaintiff received pay increases and some bonuses. Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint.

4.      She never was criticized for her work and was given more responsibility over time.

**ANSWER:**      Defendants deny each and every allegation contained in Paragraph 4 of the Complaint.

5.      No issues were ever raised about her performance prior to her having colon cancer surgery in the summer of 2016.

**ANSWER:**      Defendants admit that on information and belief, that Plaintiff had surgery related to her colon cancer diagnosis in the summer of 2016.  Defendants deny each and every remaining allegation contained in Paragraph 5 of the Complaint.

6.      Her work-load was steady to increase over all of her nine-years until she returned to work from colon cancer surgery.

**ANSWER:**      Defendants admit Plaintiff was employed with KOS for approximately nine (9) years and on information and belief, Plaintiff had surgery related to her colon cancer diagnosis.  Defendants deny each and every remaining allegation contained in Paragraph 5 of the Complaint.

7.      Before she was even scheduled to return to work on August 8, 2016, she was

-2-

called into her supervisor's office on August 1, 2016.

**ANSWER:**    Defendants admit that she had a conversation with one of her supervisors, Peter Stathakis on August 1, 2016 and that she returned from a medical leave on August 8, 2016. Defendants deny the remaining allegations in Paragraph 7 of the Complaint.

8.    In her meeting, she was hectored about going on to Medicare when she turned 65 on her then-approaching birthday.

**ANSWER:**    Defendants deny each and every allegation in Paragraph 8 of the Complaint.

9.    Plaintiffs age had never previously been a topic of discussion until this point.

**ANSWER:**    Defendants admit that Plaintiff's age had never been a topic of discussion at work.  Defendants deny each and every remaining contained allegation in Paragraph 9.

10.    At the meeting her supervisor made it clear that her continued employment could depend on her going off the company insurance plan and going onto Medicare.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 10 of the Complaint.

11.    He did not explain why.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 11 of the Complaint.

12.    There was no legitimate business or economic reason to push her off the company health insurance plan and none was ever articulated by anyone.

**ANSWER:**    Defendants deny that Plaintiff was "pushed off" any health insurance plan. Defendants deny each and every remaining allegation in Paragraph 12 of the Complaint.

13.    After returning to work, despite constant harassment about going on Medicare,

Plaintiff finally refused to leave the company health insurance plan and go on Medicare when she turned 65.

**ANSWER:** On information and belief, Defendants admit that Plaintiff did not pursue Medicare when she turned 65. Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

14. She could not really afford to go on Medicare especially as a cancer patient.

**ANSWER:** Defendants lack knowledge or information concerning the allegations of Paragraph 14 of the Complaint.

15. It would have resulted in her having to switch doctors in mid-cancer treatment as her doctors did not accept Medicare.

**ANSWER:** Defendants lack knowledge or information concerning the allegations of Paragraph 15 of the Complaint.

16. Medicare's coverages were inferior to the medical coverage that the company health insurance plan provided.

**ANSWER:** Defendants lack knowledge or information concerning the allegations of Paragraph 16 of the Complaint.

17. She would also have had to purchase at a substantial amount for her, out of her minimal salary, a Medi-gap supplementary insurance policy to cover the gaps in Medicare coverage.

**ANSWER:** Defendants deny that Plaintiff received a "minimal salary." Defendants lack knowledge or information concerning the allegations of Paragraph 16 of the Complaint.

18. These were all the factors that went into her decision to refuse to go on Medicare despite her employer's constant hectoring.

**ANSWER:** Defendants deny that they hectored Plaintiff. Defendants lack knowledge or information concerning the remaining allegations in Paragraph 18 of the Complaint.

19.     Because she refused to go on Medicare on when she turned 65, the Defendants retaliated against her.

**ANSWER:**     Defendants deny each and every allegation in Paragraph 19 of the Complaint.

20.     They retaliated against her by penalizing her every time she had to leave work to see her cancer doctors for follow-up treatments.

**ANSWER:**     Defendants deny each and every allegation in Paragraph 20 of the Complaint.

21.     They kept trying to trick her into working part-time without telling her that if she was part-time she would become ineligible for medical and other benefits that are not available to part-time employees.

**ANSWER:**     Defendants deny each and every allegation in Paragraph 21 of the Complaint.

22.     When she refused to reduce to a part-time voluntarily, and as a result also of her refusing to go on Medicare, the Defendants fired her.

**ANSWER:**     Defendants admit that Plaintiff was terminated from her employment with KOS. Defendants deny each and every remaining allegation in Paragraph 22 of the Complaint.

23.     They terminated her three months after she turned 65 and originally refused to go on Medicare, on December 27, 2016, the day employees returned to work from the Christmas holiday break.

**ANSWER:**     Defendants admit that Plaintiff was terminated from her employment with KOS on December 27, 2016, it was the day the office reopened following the Christmas holiday break, and that on information and belief, she was 65 at the time of her termination.  Defendants deny the remaining allegations in Paragraph 23 of the Complaint.

24.     When they fired her they gave her no explanation.

**ANSWER:**     Defendants admit that, on the day Plaintiff was fired, Defendants gave no explanation.

25.     However, they did not fight her unemployment claim.

**ANSWER:**     Defendants admit that they did not contest Plaintiff's unemployment claim.  Defendants deny the remaining allegations contained in Paragraph 25 of the Complaint.

26.     Plaintiffs termination was illegal under the Americans With Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA'') as more fully set forth as follows:

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 26 of the Complaint.

## JURISDICTION AND VENUE

27.     Jurisdiction of this court is invoked by:

a.     the ADA of 1990, as amended  by the ADAA, in 2009, 42 U.S.C. §§ 12101,  12102(1);  12102(2)(A)-(B);  12102(4)(B);  12102(4)(E)(i)-(ii); 12111(8);  12112(a);  12203(a);  (b)(5)(A);  and the regulations adopted pursuant to the ADA and ADAA, 29 C.F.R. §§ 1630.2(h)(IH2), 1630.2G)(l)(vi), 1630.2(m), 1630.2(n), 1630.12(a);

b.     the ADEA, of 1967, 29 U.S.C. §§ 621, 623(f)(2)(B), 626(b), 630(b);

c.     Title VII, of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e-5(g)(l); 12117(a); 12203(a);

d.     42 U.S.C. § 198la(c)(2) (limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e-5(g)(l);

e.     42 U.S.C. § 1981a(2) (providing for recovery of compensatory and punitive damages against defendant who violates § 102(b)(5) of ADA, 42 U.S.C. § 12112(b)(5); and

f.     the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 as applicable to the ADEA (see *Lorillard v. Pons*, 434 U.S. 575, 582 (1978) ("[Other than] those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA.")).

**ANSWER:**     Defendants admit that jurisdiction is proper before this Court.  Defendants deny the remaining allegations in Paragraph 27 of the Complaint.

28.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because:

    a.     Defendants reside in this district, in that they conduct business in this district sufficient to establish contacts with the district subjecting Defendants to the personal jurisdiction of the U.S. District Court of the Northern District of Illinois; and

    b.     All of the events or omissions giving rise to Plaintiff's claims occurred here in this district.

**ANSWER:**     Defendants admit that venue is proper before this Court. Defendants deny the remaining allegations in Paragraph 28 of the Complaint.

29.     The acts of discrimination, harassment, and retaliation that occurred against Mannix were continuous and ongoing over a period of time from approximately August 1, 2016 through December 27, 2016, when Mannix was terminated from Defendants.  Defendants discriminated, harassed, and/or retaliated against Mannix, and/or did not undo the acts of discrimination, harassment, and/or retaliation as more fully set forth herein.

**ANSWER:**     Defendants admit that Plaintiff was terminated from her employment with KOS on December 27, 2016.  Defendants deny the remaining allegations in Paragraph 29 of the Complaint.

30.     Mannix filed a Charge of Discrimination (the "Charge") with the United States Employment Equal Opportunity Commission (the "EEOC") on May 2, 2017, within 300 days of the last continuous act of discrimination, harassment, and/or retaliation that took place as described below. The Charge is hereby incorporated by reference as if fully set for herein, and is attached hereto as Exhibit A.

**ANSWER:**     Defendants admit that Plaintiff filed Charge No. 440-2017-03539 with the Equal Employment Opportunity Commission (the "EEOC") and it is attached as Exhibit A to the Complaint.  Defendants state that the Charge speaks for itself. Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

31.     The EEOC issued a Right to Sue Letter to Mannix on May 16, 2017. A copy of the Right to Sue Letter is attached hereto as Exhibit B. This complaint is being filed within 90-days of Mannix' [sic] receipt of the Right to Sue Letter.

**ANSWER:**     Defendants admit that there is a Notice of Right to Sue for EEOC Charge

No. 440-2017-03539 attached to the Complaint as Exhibit B.  Defendants state that the Notice

speaks for itself.  Defendants deny the remaining allegations of Paragraph 31 of the Complaint.

32.     This action is not filed with respect to the Employee Retirement Income Security
Act ("ERISA") of 1974 or pursuant to any claim with respect to the receipt or non-receipt by
Mannix of long-terms disability benefits or any rights Mannix may have with respect to the
Illinois Workers Compensation Act.

**ANSWER:**     Defendants admit that Plaintiff does not raise claims pursuant to the

Employee Retirement Income Security Act of 1974, long-term disability benefits, or the Illinois

Workers Compensation Act.  Defendants deny that Plaintiff is entitled to relief under same, and

the remaining allegations in Paragraph 32 of the Complaint.

## PARTIES

33.     Plaintiff Mary Jo Mannix is a 65 year old female. At all times relevant to the
allegations contained in the instant complaint, Mannix suffered from colon cancer and was a
person with a disability within the meaning of all applicable statutes. Mannix resides in Oak
Forest, Illinois.

**ANSWER:**     On information and belief, Defendants admit that Plaintiff is 65 years old,

she resides in Oak Forest, Illinois, and that she told Defendants she had colon cancer.

Defendants deny the remaining allegations in Paragraph 33 of the Complaint.

34.     Defendant Dental Experts, LLC dba Dental Dreams, LLC ("Dental Experts") is
an Illinois limited liability company that owns and operates dental offices throughout the United
States, including in Chicago, Illinois. Dental Experts' principal office is located at 350 N. Clark
Street, Suite 600, Chicago, Illinois.

**ANSWER:**     Defendants admit that Dental Experts, LLC d/b/a Dental Dreams, LLC is

an Illinois limited liability company with its office located at 350 N. Clark Street, Suite, 600,

Chicago, Illinois.  Defendants deny the remaining allegations of Paragraph 34.

35.     Defendant Kos Services, LLC ("Kos") is an Illinois limited liability company, and
is the parent company of Defendant Dental Experts. Kos handles all administrative work
associated with the business of Dental Experts. Kos is located at 350 N. Clark Street, Suite 600,

Chicago, Illinois.

**ANSWER:** Defendants admit that KOS Services, LLC (referred to as "KOS"), is a limited liability company and is located at 350 N. Clark Street, Suite 600, Chicago, Illinois. Defendants deny the remaining allegations in Paragraph 35 of the Complaint.

## FACTS

36. Beginning in 2007, Mannix was employed by Defendants, full-time, as an accountant in Defendants' headquarters office at 350 N. Clark Street, Chicago, Illinois.

**ANSWER:** Defendants admit that Plaintiff was employed as an accountant in 2007 and that she later worked at 350 N. Clark Street, Chicago, Illinois. Defendants deny the remaining allegations in Paragraph 36 of the Complaint.

37. Kos was Mannix' direct employer.

**ANSWER:** Defendants admit the allegations contained in Paragraph 37 of the Complaint.

38. Mannix was told that Kos was the parent company of Dental Experts.

**ANSWER:** Defendants lack knowledge or information concerning the allegations contained within Paragraph 38 of the Complaint.

39. During Mannix' years of employment, Defendants did not maintain any distinction between Kos and Dental Experts. Indeed, both Kos and Dental Experts operated out of the office located at 350 N. Clark Street, Chicago, Illinois.

**ANSWER:** Defendants admit that KOS and Dental Dreams operate out of 350 N. Clark Street, Chicago, Illinois. Defendants deny the remaining allegations contained in Paragraph 39 of the Complaint.

40. Mannix performed work for both Kos and Dental Experts.

**ANSWER:**    Defendants admit the allegations in Paragraph 40 of the Complaint.

41.    Mannix was qualified to occupy the position of accountant at Kos and Dental Experts.

**ANSWER:**    Defendants deny each and every allegation in Paragraph 41 of the Complaint.

42.    Beginning in 2007 and continuing throughout her employment, Mannix received good performance evaluations.

**ANSWER:**    Defendants deny the allegations in Paragraph 42 of the Complaint.

43.    As a result, Mannix also received regular salary increases, bonuses, and progressively greater job responsibilities.

**ANSWER:**    Defendants admit that Plaintiff received salary increases and some bonuses.    Defendants deny the remaining allegations contained in Paragraph 43 of the Complaint.

44.    At all times relevant, Mannix met Defendants' legitimate expectations.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 44 of the Complaint.

45.    In or around February 2016, Mannix was diagnosed with colon cancer.

**ANSWER:**    Defendants admit that in or around February 2016, Plaintiff told them she had cancer.

46.    Mannix' medical team immediately proscribed radiation and chemotherapy, and scheduled those treatments to occur during twenty-eight (28) days immediately following Mannix' diagnosis.

**ANSWER:**    Defendants lack knowledge or information concerning the allegations contained in Paragraph 46 of the Complaint.

47.     During the twenty-eight (28) day course of radiation and chemotherapy, Mannix was unable to work.

**ANSWER:**     Defendants lack knowledge or information concerning the allegations contained in Paragraph 47 of the Complaint.

48.     Mannix returned to work in the first part of May 2016.

**ANSWER:**     Defendants deny the allegations in Paragraph 48 of the Complaint.

49.     After returning to work, and continuing into July 2016, Mannix worked full time in the accounting position she had previously occupied for Defendants.

**ANSWER:**     Defendants admit that Plaintiff returned to work before July 2016 as an accountant. Defendants deny the remaining allegations contained in Paragraph 49 of the Complaint.

50.     Mannix continued to meet her employers' legitimate job expectations.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51.     On July 12, 2016, Mannix underwent colon surgery, an ileostomy. The ileostomy removed Mannix' colon, and required her to begin using a colostomy bag.

**ANSWER:**     Upon information and belief, Defendants admit that Plaintiff underwent surgery on July 12, 2016 and thereafter stated that she used a colostomy bag. Defendants lack knowledge or information concerning the remaining allegations contained in Paragraph 51 of the Complaint.

52.     Following the ileostomy, Mannix was scheduled to be off work until August 8, 2016.

**ANSWER:**     Defendants admit that Plaintiff returned to work on August 8 from medical leave following her surgery. Defendants lack knowledge or information concerning the

specific type of surgery. Defendants deny the remaining allegations in Paragraph 52 of the Complaint.

53. Mannix intended to return to work full-time, and to continue working until at least age seventy-five (75) years.

**ANSWER:** Defendants lack knowledge or information concerning the allegations contained in Paragraph 53 of the Complaint.

54. Nevertheless, Peter Stathakis, Defendants' Chief Financial Officer ("CFO") and Mannix' direct supervisor, called Mannix into the office to attend a meeting with him on August 1, 2016.

**ANSWER:** Defendants admit that Plaintiff met with one of her supervisors, Mr. Peter Stathakis, Chief Financial Officer for KOS Services, LLC, on August 1, 2016. Defendants deny the remaining allegations contained in Paragraph 54 of the Complaint.

55. At that meeting, Mr. Stathakis pressured Mannix to reduce her employment to a part-time capacity.

**ANSWER:** Defendants deny the allegations contained in Paragraph 55 of the Complaint.

56. Mannix restated her intention of returning to work in a full-time capacity and assured Mr. Stathakis that she felt healthy and was able to fill a full-time position.

**ANSWER:** Defendants admit the allegations contained in Paragraph 56. Defendants deny that Plaintiff made these comments in response to Defendants' pressuring her to reduce her employment to part-time.

57. Mr. Stathakis responded by informing Mannix that the company was self-insured for health care. Mr. Stathakis also informed Mannix that her cancer was costing the company a lot of money.

**ANSWER:** Defendants deny the allegations contained in Paragraph 57 of the

Complaint.

58.     Mr. Stathakis stated his awareness of Mannix' sixty-fifth birthday, which was approaching, and told Mannix she should accept Medicare upon her eligibility at age sixty-five (65).

**ANSWER:**     Defendants admit that Mr. Stathakis was aware of Plaintiff's sixty-fifth birthday.   Defendants deny the remaining allegations contained in Paragraph 58 of the Complaint.

59.     After Mannix returned to work on August 8, 2016, Mr. Stathakis and Defendants continued to harass Mannix regarding shifting to part-time status and/or accepting Medicare.

**ANSWER:**     Defendants admit that Plaintiff returned to work on August 8, 2016. Defendants deny the remaining allegations contained in Paragraph 59 of the Complaint.

60.     Mr. Stathakis and Defendants attempted to force Mannix to accept Medicare.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     Ultimately, Mannix refused to accept Medicare.  As she explained to Defendants, the Medicare plan was inferior to the group-medical insurance coverage she received through her employers' plan.

**ANSWER:**     Upon information and belief, Defendants admit Plaintiff denied Medicare. Defendants deny the remaining allegations contained in Paragraph 61 of the Complaint.

62.     Accepting Medicare would have required Mannix to change medical providers, including those doctors providing her cancer treatment.

**ANSWER:**     Defendants lack knowledge or information concerning the allegations contained in Paragraph 62 of the Complaint.

63.     Accepting Medicare also would have required Mannix to purchase supplemental coverage, and therefore would have caused Mannix to pay more out-of-pocket for medical

insurance premiums.

**ANSWER:** Defendants lack knowledge or information concerning the allegations contained in Paragraph 63 of the Complaint.

64. After Mannix refused to accept Medicare, Defendants repeatedly attempted to trick, force, or harass Mannix to reduce her employment to part-time.

**ANSWER:** Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65. For example, although Defendants had previously granted Mannix paid time off in order to attend her reasonable and limited medical appointments related to her cancer treatment, after Mannix refused Medicare, Defendants refused to grant Mannix paid time off for any additional medical appointments.

**ANSWER:** Defendants admit that they granted Plaintiff paid time off to attend her medical appointments related to her cancer treatments. Defendants deny the remaining allegations contained in Paragraph 65 of the Complaint.

66. In addition, the behavior of Defendants' managers during interactions with Mannix changed. Defendants' managers became distant and cold toward Mannix.

**ANSWER:** Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67. Defendants seemed angry that Mannix refused to be tricked into accepting part-time employment.

**ANSWER:** Defendants lack knowledge or information concerning Plaintiff's mental impressions. Defendants deny the remaining allegations contained in Paragraph 67 of the Complaint.

68. Upon information and belief, Defendants wanted Mannix to shift to part-time employment so that she would no longer be eligible for the company's group-medical insurance benefit.

**ANSWER:** Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69. Finally, on December 27, 2016, Defendants terminated Mannix. Defendants did not offer any reason for the termination.

**ANSWER:** Defendants admit Plaintiff was terminated from her employment with KOS on December 27, 2016 and that Defendants did not offer a reason on that day.

## COUNT I
## ADA-DISCRIMINATION

70. Mannix restates and realleges paragraphs 1 through 69 above as and for this paragraph 70, as if fully set forth herein.

**ANSWER:** Defendants restate and incorporate by reference, as though fully set forth herein, its answers to Paragraphs 1 through 69 as the answer to Paragraph 70 as the answer to Count I of Plaintiff's Complaint.

71. At all times relevant, Mannix met her employers' legitimate job expectations.

**ANSWER:** Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72. Mannix suffers, and at all times relevant suffered, from physical impairments, including colon cancer, chemotherapy, radiation, and ileostomy.

**ANSWER:** Paragraph 72 of the Complaint alleges a legal conclusion for which no response is required.

73. Currently, and at all times relevant, Mannix' physical impairments substantially limited one or more of Mannix' major life activities, in accordance with 42 U.S.C. § 12111(8). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

**ANSWER:** Paragraph 73 of the Complaint alleges a legal conclusion for which no response is required.

-15-

74.     Mannix is a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (the "ADA"), in that she has physical impairments as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

**ANSWER:**     Paragraph 74 of the Complaint alleges a legal conclusion for which no response is required.

75.     Mannix had a record of physical impairments when she was terminated by Defendants on December 27, 2016.

**ANSWER:**     Defendants admit that Plaintiff was terminated from her employment with KOS was terminated on December 27, 2016.  Defendants deny the remaining allegations contained in Paragraph 75 of the Complaint.

76.     Even if Mannix' colon cancer did not rise to the level of a disability under the ADA, the prescribed medical treatment for that colon cancer, including the chemotherapy, radiation, and ileostomy, were and are still disabling under the ADA; the chemotherapy, radiation, and ileostomy effect Mannix' personal life and therefore create physical impairments that substantially limit one or more of Mannix' personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at 11-4.

**ANSWER:**     Paragraph 76 of the Complaint alleges a legal conclusion for which no response is required.

77.     Mannix' colon cancer, chemotherapy, and radiation treatments are not episodic. Mannix' colon cancer is severe, she has had the condition for over a year, and the condition is permanent, with a life-expectancy prognosis of between two and five years.

**ANSWER:**     Paragraph 77 of the Complaint alleges a legal conclusion for which no response is required.

78.     Even if Mannix' symptoms were episodic, her colon cancer, chemotherapy, radiation treatments, and ileostomy would still qualify as a disability because they substantially limit a major life activity when active.  29 C.F.R. § 1630.2(j)(l)(vii).  *See also EEOC v. Sears, Roebuck, & Co.*, 233 F.3d 432 (71 Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998)(holding that episodic flares characteristic of lupus were a disability under the ADA).

**ANSWER:**     Paragraph 78 of the Complaint alleges a legal conclusion for which no

response is required.

79.    Defendants unlawfully, and in violation of the ADA

    a.    terminated Mannix because of her disabilities, including colon cancer, chemotherapy, radiation treatments, and ileostomy;

    b.    discriminated against her as a qualified individual with disability by utilizing standards, criteria, or methods of administration that he the effect of discriminating against her on the basis of disability;

    c.    discriminated against her as a qualified individual with disability by excluding or otherwise denying equal job benefits to Mannix because of her disability which Defendants knew she had and despite the fact that Mannix was a qualified individual with a disability known to have a relationship or association with colon cancer;

    d.    discriminated against her as a qualified individual with disability by failing to make reasonable accommodations to Mannix based on her known physical limitations of an otherwise qualified individual with a disability who is an employee by not allowing Mannix to receive paid time off in order to attend medical appointments, by harassing Mannix for missing work in order to attend medical appointments, and by denying employment opportunities to Mannix such as proper pay; and

    e.    discriminated against her as a qualified individual with disability by terminating Mannix when she was an otherwise qualified individual with a disability.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 79 of the Complaint.

80.    Defendants would not have terminated Mannix had it not been for her disabilities as described above.

**ANSWER:**    Defendants deny the allegations contained within Paragraph 80 of the Complaint.

81.    Following her termination, Mannix was replaced by two individuals without any disabilities, Sara Davidson and Jorayson Nool, who took over Mannix' work and responsibilities.

**ANSWER:**    Defendants admit that Plaintiff's work was redistributed following her termination within the accounting department to other employees including Sarah Davison and Jorayson Nool. Defendants lack knowledge of information concerning whether Sarah Davison or

Jorayson Nool have disabilities. Defendants deny the allegations contained within Paragraph 81 of the Complaint.

82.     As a direct and proximate result of Mannix being terminated, she has suffered, and has been caused to suffer lost wages, back pay, and fringe benefits.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.     Mannix will suffer damages going forward, as she intended to work until at least age seventy-five (75) years.

**ANSWER:**     Defendants lack knowledge or information concerning the length of time Plaintiff intended to work.  Defendants deny the remaining allegations contained in Paragraph 83 of the Complaint.

84.     Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 84 of the Complaint.

85.     Mannix is also entitled to be reinstated to her position with Defendants or, in the alternative and if reinstatement is not feasible, to front pay and benefits.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 85 of the Complaint.

## COUNT II
## ADA-HARASSMENT

86.     Mannix restates and realleges paragraphs 1 through 69 above as and for this paragraph 86, as if fully set forth herein.

**ANSWER:**     Defendants restate and incorporate by reference, as though fully set forth herein, its answers to Paragraphs 1 through 69 as the answer to Paragraph 86 as the answer to

Count I of Plaintiff's Complaint.

87.     At all times relevant, Mannix met her employers' legitimate job expectations.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 87 of the Complaint.

88.     Mannix suffers, and at all times relevant suffered, from physical impairments, including colon cancer, chemotherapy, radiation, and ileostomy.

**ANSWER:**     Paragraph 88 of the Complaint alleges a legal conclusion for which no response is required.

89.     Currently, and at all times relevant, Mannix' physical impairments substantially limited one or more of Mannix' major life activities, in accordance with 42 U.S.C. § 12111(8). See also *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

**ANSWER:**     Paragraph 89 of the Complaint alleges a legal conclusion for which no response is required.

90.     Mannix is a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (the "ADA"), in that she has physical impairments as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

**ANSWER:**     Paragraph 90 of the Complaint alleges a legal conclusion for which no response is required.

91.     Mannix had a record of physical impairments at all times relevant, including when she was terminated by Defendants on December 27, 2016.

**ANSWER:**     Defendants admit that Plaintiff was terminated from her employment with KOS on December 27, 2016.  Defendants deny the remaining allegations contained in Paragraph 91 of the Complaint.

92.     Even if Mannix' colon cancer did not rise to the level of a disability under the ADA, the prescribed medical treatment for that colon cancer, including the chemotherapy,

radiation, and ileostomy, were and are still disabling under the ADA; the chemotherapy, radiation, and ileostomy effect Mannix' personal life and therefore create physical impairments that substantially limit one or more of Mannix' personal major life activities as defined by 29 C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at 11-4.

**ANSWER:**    Paragraph 92 of the Complaint alleges a legal conclusion for which no response is required.

93.    Mannix' colon cancer, chemotherapy, and radiation treatments are not episodic. Mannix' colon cancer is severe, she has had the condition for over a year, and the condition is permanent, with a life-expectancy prognosis of between two and five years.

**ANSWER:**    Paragraph 93 of the Complaint alleges a legal conclusion for which no response is required.

94.    Even if Mannix' symptoms were episodic, her colon cancer, chemotherapy, radiation treatments, and ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii). See also *EEOC v. Sears, Roebuck, & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998)(holding that episodic flares characteristic of lupus were a disability under the ADA).

**ANSWER:**    Paragraph 94 of the Complaint alleges a legal conclusion for which no response is required.

95.    Defendants unlawfully, and in violation of the ADA, harassed Mannix from August 1, 2016 until December 27, 2016, by

    a.    threatening Mannix and otherwise attempting to force her reduce her employment to part-time;
    b.    failing to pay Mannix for reasonable, necessary, and limited time off to attend medical appointment, despite having granted Mannix paid time off for medical appointments prior to her ileostomy; and
    c.    generally treating Mannix coldly and distantly.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 95 of the Complaint.

96.    Defendants would not have harassed Mannix had it not been for her disabilities as described above.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 96 of the Complaint.

97.     Other employees of Defendants, who were not qualified individuals with a disability, were not harassed by Defendants.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 96 of the Complaint.

98.     As a direct and proximate result of Mannix being harassed, she has suffered, and has been caused to suffer lost wages and back pay.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 98 of the Complaint.

99.     Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 99 of the Complaint.

## COUNT III
## ADA-RETALIATION

100.     Mannix repeats and realleges paragraphs 1 through 69 above as and for this paragraph 100, as if fully stated herein.

**ANSWER:**     Defendants restate and incorporate by reference, as though fully set forth herein, its answers to Paragraphs 1 through 69 as the answer to Paragraph 100 as the answer to Count I of Plaintiff's Complaint.

101.     At all times relevant, Mannix met her employers' legitimate job expectations.

**ANSWER:**     Defendants deny each and every allegation contained in paragraph 101 of the Complaint.

102.    Mannix suffers, and at all times relevant suffered, from physical impairments, including colon cancer, chemotherapy, radiation, and ileostomy.

**ANSWER:**    Paragraph 102 of the Complaint alleges a legal conclusion for which no response is required.

103.    Currently, and at all times relevant, Mannix' physical impairments substantially limited one or more of Mannix' major life activities, in accordance with 42 U.S.C. § 12111(8). See also *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540 (7th Cir. 2011).

**ANSWER:**    Paragraph 103 of the Complaint alleges a legal conclusion for which no response is required.

104.    Mannix is a qualified person with a disability as defined by the Americans With Disability Act of 1990, as amended in 2008 (the "ADA"), in that she has physical impairments as defined by 42 U.S.C. 12102(2)(a) and 29 C.F.R. § 1630.2(j).

**ANSWER:**    Paragraph 104 of the Complaint alleges a legal conclusion for which no response is required.

105.    On December 27, 2016, Defendant terminated Mannix without offering any explanation or reason for the termination.

**ANSWER:**    Defendants admit Plaintiff was terminated from her employment with KOS on December 27, 2016 and that they provided no explanation that day.

106.    Mannix had a record of physical impairments when she was terminated by Defendants on December 27, 2016.

**ANSWER:**    Defendants admit that Plaintiff was terminated on December 27, 2016. Defendants deny the remaining allegations contained in Paragraph 106 of the Complaint.

107.    Even if Mannix' colon cancer did not rise to the level of a disability under the ADA, the prescribed medical treatment for that colon cancer, including the chemotherapy, radiation, and ileostomy, were and are still disabling under the ADA; the chemotherapy, radiation, and ileostomy effect Mannix' personal life and therefore create physical impairments that substantially limit one or more of Mannix' personal major life activities as defined by 29

-22-

C.F.R. § 1630.2(j) and as is described in the EEOC TECHNICAL MANUAL at 11-4.

**ANSWER:**     Paragraph 107 of the Complaint alleges a legal conclusion for which no response is required.

108.     Mannix' colon cancer, chemotherapy, and radiation treatments are not episodic. Mannix' colon cancer is severe, she has had the condition for over a year, and the condition is permanent, with a life-expectancy prognosis of between two and five years.

**ANSWER:**     Paragraph 108 of the Complaint alleges a legal conclusion for which no response is required.

109.     Even if Mannix' symptoms were episodic, her colon cancer, chemotherapy, radiation treatments, and ileostomy would still qualify as a disability because they substantially limit a major life activity when active. 29 C.F.R. § 1630.2(j)(1)(vii).  *See also EEOC v. Sears, Roebuck, & Co.*, 233 F.3d 432 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591 (7th Cir. 1998)(holding that episodic flares characteristic of lupus were a disability under the ADA).

**ANSWER:**     Paragraph 107 of the Complaint alleges a legal conclusion for which no response is required.

110.     Defendants unlawfully, and in violation of the ADA, retaliated against Mannix by harassing her and by eventually terminating her on December 27, 2016.

**ANSWER:**     Defendants admit that Plaintiff's employment with KOS was terminated on December 27, 2016.  Defendants deny the remaining allegations contained in Paragraph 110 of the Complaint.

111.     Defendants would not have retaliated against Mannix had it not been for her disabilities as described above.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 111 of the Complaint.

112.     Mannix was replaced by two individuals without any disabilities, Sara Davidson and Jorayson Nool, who took over Mannix' work and responsibilities.

**ANSWER:** Defendants admit that Plaintiff's work was distributed following her termination within the accounting department to other employees including Sara Davidson and Jorayson Nool. Defendants lack knowledge of information concerning whether Sara Davidson and Jorayson Nool have disabilities. Defendants deny the allegations contained within Paragraph 112 of the Complaint.

113.    Other employees of Defendants, who were not qualified individuals with a disability, did not experience harassment due to retaliation, termination due to retaliation, or retaliation by Defendants.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 113 of the Complaint.

114.    As a direct and proximate result of Mannix experiencing retaliation, she has suffered, and has been caused to suffer lost wages, back pay and fringe benefits.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 114 of the Complaint.

115.    Mannix will continue to suffer damages in the future, as she intended to continue working until at least the age of seventy-five (75) years.

**ANSWER:** Defendants lack knowledge or information concerning the length of time Plaintiff intended to work.  Defendants deny the remaining allegations contained in Paragraph 115 of the Complaint.

116.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 116 of the Complaint.

117.    Mannix is also entitled to be reinstated to her position with Defendants, and in the alternative if reinstatement is not feasible, to front pay and benefits.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 117 of the Complaint.

## COUNT IV
## ADEA-DISCRIMINATION

118.    Mannix restates and realleges paragraph 1 through 69 above as and for this paragraph 118, as if fully stated herein.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraphs 1 through 69 above as and for this paragraph 118, as if fully stated herein.

119.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 119 of the Complaint.

120.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

**ANSWER:**    Defendants admit that Plaintiff began her employment in November of 2007 and that she was terminated on December 27, 2016, and that at some points during that period she received salary increases and bonuses.  Defendants deny the remaining allegations contained in Paragraph 120 of the Complaint.

121.    Mannix was born in 1951.

**ANSWER:**    Upon information and belief, Defendants admit the allegations contained in Paragraph 121 of the Complaint.

122.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

**ANSWER:** Defendants admit that in or around February 2016 and that she missed time from work for radiation and chemotherapy treatments. Defendants deny the remaining allegations contained in Paragraph 122 of the Complaint.

123. In early May 2016, I [*sic*] returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

**ANSWER:** On information and belief, Defendants admit Plaintiff underwent surgery on July 12, 2016. Defendants deny the remaining allegations contained in Paragraph 123 of the Complaint.

124. Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

**ANSWER:** Defendants admit that Plaintiff informed them that she had surgery on July 12, 2016, and that she returned to work on August 8, 2016.

125. On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

**ANSWER:** Defendants admit that Plaintiff met with one of her supervisors, Mr. Peter Stathakis, Chief Financial Officer for KOS Services, LLC, on August 1, 2016. Defendants deny the remaining allegations contained in Paragraph 125 of the Complaint.

126. At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

**ANSWER:** Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127. Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

**ANSWER:** Defendants deny the allegations contained in Paragraph 127 of the

Complaint.

128.     When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129.     Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130.     When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131.     Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132.     Finally, Defendant terminated Mannix on December 27, 2016.

**ANSWER:**     Defendants admit that Plaintiff's employment with KOS terminated on December 27, 2017.  Defendants deny that it terminated Plaintiff for discriminatory or retaliatory reasons and the remaining allegations contained in Paragraph 132 of the Complaint.

133.     Defendants unlawfully, and in violation of the Age Discrimination in

Employment Act (the "ADEA"), terminated Mannix because of her age, 65.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 133 of the Complaint.

134.    But for Mannix' age, Mannix would not have been terminated.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 134 of the Complaint.

135.    Mannix was replaced by two individuals substantially younger, Sarah Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

**ANSWER:** Defendants admit that Plaintiff's work was redistributed following her termination within the accounting department to other employees including Sarah Davison and Jorayson Nool (YOB: 1982). Defendants deny remaining the allegations contained within Paragraph 135 of the Complaint.

136.    As a direct and proximate result of Mannix being terminated, she has suffered, and has been caused to suffer lost wages, back pay, and fringe benefits.

**ANSWER:** Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137.    Mannix will continue to suffer damages in the future, as she intended to continue working until at least age seventy-five (75) years.

**ANSWER:** Defendants lack knowledge or information concerning the length of time Plaintiff intended to work. Defendants deny the remaining allegations contained in Paragraph 137 of the Complaint.

138.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:** Defendants deny the allegations contained in Paragraph 138 of the

Complaint.

139.    Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 139 of the Complaint.

## COUNT V
## ADEA-HARASSMENT

140.    Mannix restates and realleges paragraph 1 through 69 above as and for this paragraph 140, as if fully stated herein.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraphs 1 through 69 above as and for this paragraph 140, as if fully stated herein.

141.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 141 of the Complaint.

142.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

**ANSWER:**    Defendants admit that Plaintiff began her employment in November of 2007 and that she was terminated on December 27, 2016, and that at some points during that period she received salary increases and bonuses.  Defendants deny the remaining allegations contained in Paragraph 142 of the Complaint.

143.    Mannix was born in 1951.

**ANSWER:**    Upon information and belief, Defendants admit the allegations contained in Paragraph 143 of the Complaint.

144.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

**ANSWER:**    Defendants admit that in or around February 2016 Plaintiff missed time from work for radiation and chemotherapy treatments.    Defendants deny the remaining allegations contained in Paragraph 144 of the Complaint.

145.    In early May 2016, I [*sic*] returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

**ANSWER:**    Defendants admit Plaintiff underwent surgery on July 12, 2016. Defendants deny the remaining allegations contained in Paragraph 145 of the Complaint.

146.    Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

**ANSWER:**    Defendants admit that Plaintiff informed them that she had surgery on July 12, 2016, and that she returned to work on August 8, 2016.

147.    On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

**ANSWER:**    Defendants admit that Plaintiff met with one of her supervisors, Mr. Peter Stathakis, Chief Financial Officer for KOS Services, LLC, on August 1, 2016.  Defendants deny the remaining allegations contained in Paragraph 147 of the Complaint.

148.    At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 148 of the Complaint.

149.    Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

**ANSWER:** Defendants deny the allegations contained in Paragraph 149 of the Complaint.

150. When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

**ANSWER:** Defendants deny the allegations contained in Paragraph 150 of the Complaint.

151. Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

**ANSWER:** Defendants deny the allegations contained in Paragraph 151 of the Complaint.

152. When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

**ANSWER:** Defendants deny the allegations contained in Paragraph 152 of the Complaint.

153. Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

**ANSWER:** Defendants deny the allegations contained in Paragraph 153 of the Complaint.

154. Defendants wanted Mannix to transition to part time employment so that she would no longer be eligible to participate in the Defendants' group medical insurance benefit.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 154 of the Complaint.

155.    Mannix refused to be tricked or harassed into part time status, which seemed to make Defendants angry.

**ANSWER:**    Defendants lack knowledge or information concerning Plaintiff's mental impressions. Defendants deny the remaining allegations contained in Paragraph 155 of the Complaint.

156.    Defendants unlawfully, and in violation of the Age Discrimination in Employment Act (the "ADEA''), harassed Mannix because of her age, 65, by:

   a.    threatening Mannix and otherwise attempting to force her reduce her employment to part time;
   b.    failing to pay Mannix for reasonable, necessary, and limited time off to attend medical appointment, despite having granted Mannix paid time off for medical appointments prior to her ileostomy; and
   c.     generally treating Mannix coldly and distantly.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 156 of the Complaint.

157.    Prior to her ileostomy, Mannix never abused the privilege of paid time off for medical appointments. Rather, Mannix limited her missed time to necessary appointments and scheduled those appointments at times that she would not be missed at Defendants' office.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 157 of the Complaint.

158.    Defendants were aware of Mannix' age and of the fact that she would be turning sixty-five (65) years old in 2016.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 158 of the Complaint.

159.    Defendants did not treat any employees who were under the age of forty (40) years in the manner described above.

**ANSWER:**    Defendant denies that its actions toward Plaintiff were discriminatory, harassing, or retaliatory.  Defendant denies each and every allegation contained in Paragraph 159

of the Complaint.

160.    On December 27, 2016, Mannix was subjected to the final act of Defendants' harassment when Defendants terminated Mannix because of her age, sixty-five (65) years.

**ANSWER:**    Defendants admit that Plaintiff's employment with KOS terminated on December 27, 2017.  Defendants deny the remaining allegations contained in Paragraph 160 of the Complaint.

161.    But for Mannix' age, Mannix would not have been harassed, as described above.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 161 of the Complaint.

162.    After her termination, Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

**ANSWER:**    Defendants admit that it redistributed Plaintiff's work following her termination within the accounting department to other employees including Sarah Davison and Jorayson Nool (YOB: 1982). Defendants deny remaining the allegations contained within Paragraph 162 of the Complaint.

163.    As a direct and proximate result of Mannix being harassed and terminated, she has suffered, and has been caused to suffer lost wages, back pay, fringe benefits, and emotional distress.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 163 of the Complaint.

164.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 164 of the Complaint.

165.    Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 165 of the Complaint.

## COUNT VI
## ADEA-RETALIATION

166.    Mannix restates and realleges paragraph 1 through 69 above as and for this paragraph 166, as if fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraphs 1 through 69 above as and for this paragraph 166, as if fully stated herein.

167.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 167 of the Complaint.

168.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

**ANSWER:**    Defendants admit that Plaintiff was began her employment in November of 2007 and that she was terminated on December 27, 2016, and that at some points during that period she received salary increases and bonuses.  Defendants deny the remaining allegations contained in Paragraph 120 of the Complaint.

169.    Mannix was born in 1951.

**ANSWER:**    Upon information and belief, Defendants admit the allegations contained in Paragraph 169 of the Complaint.

170.    In February of 2016, Mannix was diagnosed with colon cancer and had to miss

time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

**ANSWER:** Defendants admit that in or around February 2016 Plaintiff told them she was diagnosed with colon cancer and that she missed time from work for radiation and chemotherapy treatments. Defendants deny the remaining allegations contained in Paragraph 170 of the Complaint.

171. In early May 2016, Mannix returned to work full time and continued to work full time until July 12, 2016 when Mannix had an ileostomy as described above.

**ANSWER:** Defendants admit Plaintiff underwent surgery on July 12, 2016. Defendants deny the remaining allegations contained in Paragraph 171 of the Complaint.

172. Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

**ANSWER:** Defendants admit that Plaintiff informed them that she had surgery on July 12, 2016, and that she returned to work on August 8, 2016. Defendants deny the remaining allegations contained in Paragraph 172 of the Complaint.

173. On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

**ANSWER:** Defendants admit that Plaintiff met with one of her supervisors, Mr. Peter Stathakis, Chief Financial Officer for KOS Services, LLC, on August 1, 2016. Defendants deny the remaining allegations contained in Paragraph 173 of the Complaint.

174. At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

**ANSWER:** Defendants deny the allegations contained in Paragraph 174 of the Complaint.

175.     Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 175 of the Complaint.

176.     When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 176 of the Complaint.

177.     Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

**ANSWER:**     Defendants admit that Plaintiff returned to work on August 8, 2017. Defendants deny the remaining allegations contained in Paragraph 177 of the Complaint.

178.     When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 178 of the Complaint.

179.     Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 179 of the Complaint.

180.     Defendants wanted Mannix to transition to part time employment so that she would no longer be eligible to participate in the Defendants' group medical insurance benefit.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 180 of

the Complaint.

181.    Mannix refused to be tricked into part time status, which seemed to make Defendants angry.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 181 of the Complaint.

182.    Defendants unlawfully, and in violation of the Age Discrimination in Employment Act (the "ADEA"), retaliated against Mannix because of her age, 65, by:

    a.    threatening, harassing, and otherwise attempting to force Mannix to reduce her employment to part-time;

    b.    failing to pay Mannix for reasonable, necessary, and limited time off to attend medical appointment, despite having granted Mannix paid time off for medical appointments prior to her ileostomy;

    c.    generally treating Mannix coldly and distantly; and

    d.    terminating Mannix on December 27, 2016.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 182 of the Complaint.

183.    Prior to her ileostomy, Mannix never abused the privilege of paid time off for medical appointments. Rather, Mannix limited her missed time to necessary appointments and scheduled those appointments at times that she would not be missed at Defendants' office.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 183 of the Complaint.

184.    Defendants were aware of Mannix' age and of the fact that she would be turning sixty-five (65) years old in 2016.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 184 of the Complaint.

185.    Defendants did not treat any employees who were under the age of forty (40) years in the manner described above.

**ANSWER:**    Defendant denies that its actions toward Plaintiff were discriminatory,

-37-

harassing, or retaliatory. Defendant denies each and every allegation contained in Paragraph 185 of the Complaint.

186. On December 27, 2016, Mannix was subjected to the final act of Defendants' retaliation when Defendants terminated Mannix because of her age, sixty-five (65) years.

**ANSWER:** Defendants admit that that Plaintiff was terminated on December 27, 2017. Defendants deny the remaining allegations contained in Paragraph 186 of the Complaint.

187. But for Mannix' age, Mannix would not have experienced retaliation, as described above.

**ANSWER:** Defendants deny they retaliated against Plaintiff and each and every allegation contained in Paragraph 187 of the Complaint.

188. After her termination, Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

**ANSWER:** Defendants admit that Plaintiff's work was redistributed following her termination within the accounting department to other employees including Sarah Davison and Jorayson Nool (YOB: 1982). Defendants deny remaining the allegations contained within Paragraph 188 of the Complaint.

189. As a direct and proximate result of Mannix experiencing retaliation, she has suffered, and has been caused to suffer lost wages, back pay, fringe benefits, and emotional distress.

**ANSWER:** Defendants deny the allegations contained in Paragraph 189 of the Complaint.

190. Mannix will continue to suffer damages into the future, as she intended to continue working until at least age seventy-five (75) years.

**ANSWER:** Defendants lack knowledge or information concerning the length of time

-38-

Plaintiff intended to work. Defendants deny the remaining allegations contained in Paragraph 190 of the Complaint.

191.    Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 191 of the Complaint.

192.    Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 192 of the Complaint.

## COUNT VII
## ADEA-WILLFULNESS

193.    Mannix restates and realleges paragraph 1 through 69 and 118 through 192 above as and for this paragraph 193, as if fully set forth herein.

**ANSWER:**    Defendants repeat and reallege their answers to Paragraphs 1 through 69 and 118 through 192 above as and for this paragraph 193, as if fully stated herein.

194.    At all times relevant, Mannix met her employers' reasonable expectations in the performance of her job.

**ANSWER:**    Defendants deny each and every allegation contained in Paragraph 194 of the Complaint.

195.    Between the beginning of her employment in 2007 and the termination of her employment on December 27, 2016, Mannix received good evaluations for her work performance, regular raises, and bonuses.

**ANSWER:**    Defendants admit that Plaintiff was began her employment in November of 2007 and that she was terminated on December 27, 2016, and that at some points during that

period she received salary increases and bonuses. Defendants deny the remaining allegations contained in Paragraph 195 of the Complaint.

196. Mannix was born in 1951.

**ANSWER:** Upon information and belief, Defendants admit the allegations contained in Paragraph 196 of the Complaint.

197. In February of 2016, Mannix was diagnosed with colon cancer and had to miss time from work from approximately mid-February 2016 until early May of 2016, due to radiation and chemotherapy treatments as described above.

**ANSWER:** Defendants admit that in or around February 2016 she informed them that she was diagnosed with colon cancer and that she missed time from work for radiation and chemotherapy treatments. Defendants deny the remaining allegations contained in Paragraph 197 of the Complaint.

198. In early May 2016, I returned to work full-time and continued to work full-time until July 12, 2016 when Mannix had an ileostomy as described above.

**ANSWER:** Defendants admit Plaintiff underwent surgery on July 12, 2016. Defendants deny the remaining allegations contained in Paragraph 198 of the Complaint.

199. Following her July 12, 2016 ileostomy, Mannix was scheduled to return to work on August 8, 2016.

**ANSWER:** Defendants admit that Plaintiff informed them that she had surgery on July 12, 2016, and that she returned to work on August 8, 2016. Defendants deny the remaining allegations containing in Paragraph 199 of the Complaint.

200. On August 1, 2016, Mannix' direct supervisor, Peter Stathakis, CEO of Defendants, called Mannix into a meeting regarding her job.

**ANSWER:** Defendants admit that Plaintiff met with one of her supervisors, Mr. Peter

Stathakis, Chief Financial Officer for KOS Services, LLC, on August 1, 2016. Defendants deny the remaining allegations contained in Paragraph 200 of the Complaint.

201.    At that meeting, Mr. Stathakis tried to get Mannix to work part-time as indicated above.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 201 of the Complaint.

202.    Mr. Stathakis told Mannix that her cancer treatments were costing the Defendants a lot of money because the Defendants' group medical insurance was self-insured.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 202 of the Complaint.

203.    When Mannix refused to reduce her hours to part time, Mr. Stathakis began talking to Mannix about the fact that she was nearing retirement age and would be eligible to receive Medicare upon her sixty-fifth birthday.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 203 of the Complaint.

204.    Beginning on August 1, 2016 and continuing after Mannix returned to work on August 8, 2016, Mr. Stathakis tried to force Mannix to accept Medicare in lieu of the Defendants' group medical insurance plan.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 204 of the Complaint.

205.    When Mannix ultimately refused to accept Medicare because Medicare would have been inferior to the coverage she received under the Defendants' group medical insurance plan, Defendants began harassing Mannix and retaliating against Mannix.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 205 of the Complaint.

206.    Mr. Stathakis and Defendants repeatedly attempted to trick or force Mannix into part time employment.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 206 of the Complaint.

207.    Defendants wanted Mannix to transition to part time employment so that she would no longer be eligible to participate in the Defendants' group medical insurance benefit.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 207 of the Complaint.

208.    Mannix refused to be tricked into part time status, which seemed to make Defendants angry.

**ANSWER:**    Defendants lack knowledge or information concerning Plaintiff's mental impressions. Defendants deny the remaining allegations contained in Paragraph 208 of the Complaint.

209.    Prior to her ileostomy, Mannix never abused the privilege of paid time off for medical appointments.  Rather, Mannix limited her missed time to necessary appointments and scheduled those appointments at times that she would not be missed at Defendants' office.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 209 of the Complaint.

210.    Defendants were aware of Mannix' age and of the fact that she would be turning sixty-five (65) years old in 20 16.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 210 of the Complaint.

211.    Defendants did not treat any employees who were under the age of forty (40) years in this way.

**ANSWER:**    Defendant denies that its actions toward Plaintiff were discriminatory,

harassing, or retaliatory. Defendant denies each and every allegation contained in Paragraph 211 of the Complaint.

212. On December 27, 2016, Mannix was subjected to the final act of Defendants' retaliation when Defendants terminated Mannix because of her age, sixty-five (65) years.

**ANSWER:** Defendants admit that that Plaintiff was terminated on December 27, 2017. Defendants deny the remaining allegations contained in Paragraph 212 of the Complaint.

213. But for Mannix' age, Mannix would not have experienced the harassment, retaliation, and discrimination as described above.

**ANSWER:** Defendants deny each and every allegation contained in Paragraph 213 of the Complaint.

214. After her termination, Mannix was replaced by two individuals substantially younger, Sara Davidson (yob 1982) and Jorayson Nool (yob 1982), who took over Mannix' work and responsibilities.

**ANSWER:** Defendants admit that Plaintiff's work was redistributed following her termination within the accounting department to other employees including Sarah Davison and Jorayson Nool (YOB: 1982). Defendants deny remaining the allegations contained within Paragraph 214 of the Complaint.

215. As a direct and proximate result of Mannix experiencing these willful acts of discrimination, harassment, and retaliation, leading up to Mannix' termination and including that termination, Mannix has suffered, and has been caused to suffer lost wages, back pay, fringe benefits, and emotional distress.

**ANSWER:** Defendants deny the allegations contained in Paragraph 215 of the Complaint.

216. Mannix will continue to suffer damages into the future, as she intended to continue working until at least age seventy-five (75) years.

**ANSWER:** Defendants lack knowledge or information concerning the length of time

Plaintiff intended to work. Defendants deny the remaining allegations contained in Paragraph 216 of the Complaint.

217.     Defendants knew or showed willful disregard for whether the ADEA prohibited Defendants' conduct.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 217 of the Complaint.

218.     Because Defendants acts were willful, Mannix is entitled to double the back-pay damages she has suffered and double the fringe benefits lost, pursuant to the ADEA 19 U.S.C. § 626(b)

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 218 of the Complaint.

219.     Mannix is entitled to recover costs and attorneys' fees incurred in bringing this action.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 219 of the Complaint.

220.     Mannix is also entitled to be reinstated to her position with Defendants, or in the alternative if reinstatement is not feasible, to front pay and benefits.

**ANSWER:**     Defendants deny each and every allegation contained in Paragraph 220 of the Complaint.

## JURY TRIAL DEMANDED

Plaintiff demands jury trial of all counts to which she is entitled to a jury trial.

**ANSWER:**     Defendants admit that Plaintiff demands a jury on all counts of the Complaint for which she can seek one.

## AFFIRMATIVE AND OTHER DEFENSES

Without admitting any allegations asserted in the Complaint, Defendants assert the following affirmative and other defenses. Nothing stated in any of the following defenses constitutes a concession that Defendants bear any burden of proof on any issue on which it would not otherwise bear such burden.

1.      Insofar as Plaintiff seeks to recover relief for (a) alleged incidents occurring prior to the applicable limitations period for the filing of an administrative charge of discrimination; and (b) for alleged incidents of discrimination not listed in any administrative charge, and (c) against parties not named in any administrative charge, Plaintiff may not recover any relief for such incidents of alleged discrimination.

2.      To the extent Plaintiff has failed to institute this action within the time required under the applicable statute of limitations, her claims for relief are barred.

3.      Plaintiff's claims fail to the extent that they are barred, in whole or in part, by the doctrine of waiver, equitable estoppel, unclean hands, and/or laches.

4.      Plaintiff's prayer for relief must fail to the extent that Plaintiffs have failed to mitigate their damages as required by law.

5.      To the extent that Plaintiff has received any income from other employment and other sources, such monies must be offset against any damages allegedly due to Plaintiff from Defendants.

6.      Defendants are not liable for liquidated damages under the ADEA because its actions towards Plaintiff were taken in good faith. United did not willfully, knowingly, or recklessly disregard any law with respect to its treatment of Plaintiff, thereby negating Plaintiff's entitlement to liquidated damages.

7.      To the extent it may later be determined that any person committed unlawful acts

as alleged in the Complaint, which is expressly denied, such acts were committed without the knowledge of Defendants and without Defendants' authorization, ratification or notification, and to the extent that such persons were Defendants' employees, such acts were outside the scope of any employee's duties with Defendants. Accordingly, Defendants are not liable under the doctrine of *respondeat superior* or otherwise for the alleged unlawful acts and conduct of any such persons.

8.     Any claim by Plaintiff for compensatory or punitive damages under the ADA are limited by the damages cap imposed by the Civil Rights Act of 1991.

9.     Plaintiff's disability claim fails to the extent she failed to request a reasonable accommodation of her alleged disability, failed to engage in an interactive process to identify a reasonable accommodation, and/or otherwise failed to follow the procedural requirements of United's reasonable accommodation policy, and/or to the extent that accommodation of his alleged disability posed an undue hardship.

10.     Defendants are not liable for punitive damages because it has at all times made a good faith effort to comply with the ADA. Any actions taken by United regarding Plaintiff were taken in good faith, in accordance with Defendants' internal policies against discrimination and applicable laws, and not taken wantonly or with malice or bad faith and/or reckless indifference to the Plaintiff's protected rights. Defendants therefore did not willfully violate any law with respect to its treatment of Plaintiff, thereby negating Plaintiff's entitlement to punitive damages. To the extent that Plaintiff cannot prove actual or punitive damages, she can only recover nominal damages.

11.     To the extent Plaintiff asserts a viable claim; an excessive punitive damages award would violate Defendants' rights under the United States Constitution, including rights

secured under the due process, equal protection and takings clauses.

12.     An award of punitive damages will violate Defendants  rights to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution because: (a) the standard for an award of punitive damages is so vague, indefinite and uncertain that it does not give Defendants adequate notice of the kind of conduct for which they may be liable for punitive damages or the extent of their possible liability; (b) the judge or jury is not provided with constitutionally adequate standards of sufficient clarity, objectivity, and uniformity for determining either the appropriate imposition of an award of punitive damages or the appropriate size of an award of punitive damages; (c) the judge or jury is not instructed in a constitutionally adequate manner on the limits of punitive damages awards imposed by the applicable principles of punishment and deterrence; (d) the judge or jury is not expressly prohibited from awarding punitive damages, or from determining the amount of an award of punitive damages, in whole or in part, on the basis of individually discriminatory characteristics, including without limitation the residence, wealth, and status of Defendants; (e) Defendants may be subjected to punishment based upon the same course of conduct in more than one action; (f) the judge or jury is permitted to award punitive damages under standards for determining liability for, and the amount of, punitive damages that are vague and arbitrary and that do not define with sufficient clarity the culpable conduct or mental state that makes an award of punitive damages permissible; and (g) an award of punitive damages is not subject to judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate standards of sufficient clarity, objectivity, and uniformity.

13.     Plaintiff's claim for punitive damages is barred to the extent that it seeks the admission into evidence of Defendants' net worth in determining whether punitive damages are

to be awarded and/or in what amount they are to be awarded. The admission of net worth data suggests that it is appropriate to award punitive damages based upon Defendants' financial status rather than specific misconduct, and thus has the effect of treating classes of citizens unequally in violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

14.     Plaintiffs' claims for punitive damages against Defendants cannot be upheld, because any award of punitive damages under the statutes relied upon in the Complaint without bifurcating the trial of all punitive damages would violate Defendants' due process rights guaranteed by the United States Constitution.

United reserves the right to amend its Answer to raise any additional defenses that may become available during the discovery process, as well as the right to assert additional affirmative defenses as established by the facts of the case.

To the extent that any of the foregoing allegations in Plaintiff's Complaint have not been expressly admitted or denied, they are hereby denied.

Respectfully submitted,

DENTAL EXPERTS, LLC d/b/a DENTAL
DREAMS LLC, and KOS SERVICES LLC


By: /s/ *David L. Christlieb*

---

David L. Christlieb

David L. Christlieb ARDC# 06281173
O. Hanna Badmus ARDC# 6308524
LITTLER MENDELSON, P.C.
A Professional Corporation
321 North Clark Street
Suite 1000
Chicago, IL 60654
312.372.5520

Dated: September 25, 2017

## CERTIFICATE OF SERVICE

David Christlieb, an attorney, hereby certifies that, on September 25, 2017, he caused a copy of the foregoing **Defendant's Answer and Affirmative and Other Defenses to Plaintiff's Complaint** to be filed electronically with the clerk of the court using the court's CM/ECF system. Notification of such filing will be sent to the following parties:

L. Steven Platt
Teresa A. Minnich
Robbins Salonmon and Patt, Ltd.
180 N. LaSalle Street
Suite 3300
Chicago, IL 60601
lsplatt@rsplaw.com
tminnich@rsplaw.com

/s/ *David L. Christlieb*

David L. Christlieb